BLANK ROME LLP
Todd A. Boock (SBN 181933)
TBoock@BlankRome.com
Angela Y. Shin (SBN 241132)
AShin@BlankRome.com
1925 Century Park East, 19th Floor
Los Angeles, CA  90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Attorneys for WELLS FARGO BANK, N.A., as Trustee on behalf of holders of the
HarborView Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates Series
2006-12; and BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN McLAUGHLIN,<br><br>                    Plaintiff,<br><br>         vs.<br><br>WELLS FARGO BANK, N.A., AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST, MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-12; BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOAN SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP.; AND DOES 1 THROUGH 10, INCLUSIVE<br><br>                    Defendants. | Case No. SACV12-01114-DOC(RNBx)<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:      November 19, 2012<br>Time:      8:30 a.m.<br>Place:     9D<br>Judge:     Hon. David O. Carter |

Defendants WELLS FARGO BANK, N.A., as Trustee on behalf of Holders of

the HarborView Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates

Series 2006-12; BANK OF AMERICA, N.A., as successor by merger to BAC Home

Loan Servicing, LP fka Countrywide Home Loans Servicing, LP's (collectively,

"Defendants") respectfully request that the Court take judicial notice of the following

136045.30868/95085653v.1                                 1

1 | documents at the hearing on Defendants' Motion to Dismiss Plaintiff's Complaint
2 | pursuant to Federal Rules of Evidence ("FRE") 201.

3 |       1.     A Deed of Trust dated September 14, 2006 and recorded on September
4 | 21, 2006 in the Orange County Recorder's Office, as Instrument No. 2006-
5 | 000628966. A true and correct copy of this document is attached hereto as Exhibit
6 | "1." Judicial notice of this document is appropriate because it can be accurately and
7 | readily determined from sources whose accuracy cannot reasonably be questioned by
8 | resort to the Official Records of the County of Orange, State of California. (FRE
9 | 201).

10 |       2.     The Assignment of Deed of Trust dated September 6, 2011 and recorded
11 | on September 20, 2011 in the Orange County Recorder's Office, as Instrument No.
12 | 2011-000463859. A true and correct copy of this document is attached hereto as
13 | Exhibit "2." Judicial notice of this document is appropriate because it can be
14 | accurately and readily determined from sources whose accuracy cannot reasonably be
15 | questioned by resort to the Official Records of the County of Orange, State of
16 | California. (FRE 201).

17 |       3.     The Notice of Default and Election to Sell Under Deed of Trust dated
18 | October 5, 2011 and recorded on October 6, 2011 in the Orange County Recorder's
19 | Office, as Instrument No. 2011-000496218. A true and correct copy of this document
20 | is attached hereto as Exhibit "3." Judicial notice of this document is appropriate
21 | because it can be accurately and readily determined from sources whose accuracy
22 | cannot reasonably be questioned by resort to the Official Records of the County of
23 | Orange, State of California. (FRE 201).

24 |       4.     The Corporate Assignment of Deed of trust dated April 4, 2012 and
25 | recorded on April 12, 2012 in the Orange County Recorder's Office, as Instrument
26 | No. 2012-000206689. A true and correct copy of this document is attached hereto as
27 | Exhibit "4." Judicial notice of this document is appropriate because it can be

28 |

1   accurately and readily determined from sources whose accuracy cannot reasonably be

2   questioned by resort to the Official Records of the County of Orange, State of

3   California.  (FRE 201).

4          5.     The Notice of Trustee's Sale dated April 25, 2012 and recorded on April

5   27, 2012 in the Orange County Recorder's Office, as Instrument No. 2012-

6   000206689.  A true and correct copy of this document is attached hereto as Exhibit

7   "5."  Judicial notice of this document is appropriate because it can be accurately and

8   readily determined from sources whose accuracy cannot reasonably be questioned by

9   resort to the Official Records of the County of Orange, State of California.  (FRE

10   201).

11         6.     The Complaint, filed in the Orange County Superior Court on April 12,

12   2012, entitled *Brian McLaughlin and Datacom Investment Company v. Wells Fargo*

13   *Bank, Bank of America, N.A., and ReconTrust Company, N.A.*, case number 30-2012-

14   00561729-CU-CO-CJC. A true and correct copy of this document is attached hereto

15   as Exhibit "6."  Judicial notice of this document is appropriate because it can be

16   accurately and readily determined from sources whose accuracy cannot reasonably be

17   questioned by resort to the public court records of the Orange County Superior Court.

18   (FRE 201).

19         7.     The Ex Parte Application For a Temporary Restraining Order and Order

20   to Show Cause Regarding Why a Preliminary Injunction Cannot Issue filed in the

21   Orange County Superior Court on May 17, 2012. A true and correct copy of this

22   document is attached hereto as Exhibit "7."  Judicial notice of this document is

23   appropriate because it can be accurately and readily determined from sources whose

24   accuracy cannot reasonably be questioned by resort to the public court records of the

25   Orange County Superior Court. (FRE 201).

26         8.     The Temporary Restraining Order filed in the Orange County Superior

27   Court on May 18, 2012. A true and correct copy of this document is attached hereto as

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

1   Exhibit "8." Judicial notice of this document is appropriate because it can be

2   accurately and readily determined from sources whose accuracy cannot reasonably be

3   questioned by resort to the public court records of the Orange County Superior Court.

4   (FRE 201).

5        9.    The Memorandum of Points and Authorities In Support of Plaintiffs'

6   Request For a Preliminary Injunction filed in the Orange County Superior Court on

7   May 25, 2012. A true and correct copy of this document is attached hereto as Exhibit

8   "9." Judicial notice of this document is appropriate because it can be accurately and

9   readily determined from sources whose accuracy cannot reasonably be questioned by

10  resort to the public court records of the Orange County Superior Court. (FRE 201).

11       10.   Defendants' Opposition to Order to Show Cause Why Preliminary

12  Injunction Should Not Issue filed in the Orange County Superior Court on June 15,

13  2012 and Declaration of Diana De Long in Support of Opposition to the Order to

14  Show Cause Regarding Why Preliminary Injunction Should Not Issue. True and

15  correct copies of these documents are collectively attached hereto as Exhibit "10."

16  Judicial notice of these documents are appropriate because they can be accurately and

17  readily determined from sources whose accuracy cannot reasonably be questioned by

18  resort to the public court records of the Orange County Superior Court. (FRE 201).

19       11.   Plaintiffs' Reply to Defendants' Opposition to Plaintiff's Memorandum

20  in Support of Plaintiffs' Request for a Preliminary Injunction filed in the Orange

21  County Superior Court on June 18, 2012. A true and correct copy of this document is

22  attached hereto as Exhibit "11." Judicial notice of this document is appropriate

23  because it can be accurately and readily determined from sources whose accuracy

24  cannot reasonably be questioned by resort to the public court records of the Orange

25  County Superior Court. (FRE 201).

26       12.   The Minute Order dated June 29, 2012. A true and correct copy of this

27  document is attached hereto as Exhibit "12." Judicial notice of this document is

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    appropriate because it can be accurately and readily determined from sources whose

2    accuracy cannot reasonably be questioned by resort to the public court records of the

3    Orange County Superior Court.  (FRE 201).

4         13.    The Request For Dismissal filed by Plaintiff Brian McLaughlin dated

5    July 12, 2012.  A true and correct copy of this document is attached hereto as Exhibit

6    "13." Judicial notice of this document is appropriate because it can be accurately and

7    readily determined from sources whose accuracy cannot reasonably be questioned by

8    resort to the public court records of the Orange County Superior Court. (FRE 201).

9         14.    The Request For Dismissal filed by Plaintiff Datacom Investment

10   Services, Inc.  A true and correct copy of this document is attached hereto as Exhibit

11   "14." Judicial notice of this document is appropriate because it can be accurately and

12   readily determined from sources whose accuracy cannot reasonably be questioned by

13   resort to the public court records of the Orange County Superior Court. (FRE 201).

14

15

16   DATED:  October 8, 2012          BLANK ROME LLP

17

18                                    /s/ Angela Y. Shin
                                      Angela Y. Shin
19                                    Attorneys for Defendants WELLS FARGO
                                      BANK, N.A., as Trustee on behalf of holders of
20                                    the HarborView Mortgage Loan Trust,
                                      Mortgage Loan Pass-Through Certificates
21                                    Series 2006-12; and BANK OF AMERICA,
                                      N.A.,
22

23

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1925 Century Park East, 19th Floor, Los Angeles, California 90067.

On October 8, 2012, I served the foregoing document(s) described as **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the parties in this action by serving:

**Joseph La Costa, Esq.**
**7840 Mission Center Court, Suite 104**
**San Diego, CA  92108**

☒      **By Envelope -** by placing ☐ the original ☒ a true copy thereof enclosed in sealed Envelope addressed as below and delivering such envelopes:

☒      **By Mail:  As follows:**  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on October 8, 2012, at Los Angeles, California.

☒      **STATE**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.


/s/ Dina J. Melendez
Dina J. Melendez

136045.30868/95085653v.1

6

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

# EXHIBIT 1

**LANDSAFE TITLE**

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||   78.00

**2006000628966** 12:49pm 09/21/06

119 30 D11 25

0.00 0.00 0.00 0.00 72.00 0.00 0.00 0.00

Recording Requested By:
K. SANTOS

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
STEVE SEREPONGKY

03381698-45
656-035-10

——————— [Space Above This Line For Recording Data] ———————

06001127                          00014837592009006
(Escrow/Closing #)                    [Doc ID #]

# DEED OF TRUST

MIN 1001337-0001682589-8

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  SEPTEMBER 14, 2006 , together with all Riders to this document.
(B) "Borrower" is
BRIAN MCLAUGHLIN, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

 -6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291                     **Form 3005  1/01**
CONV/VA



* 2 3 9 9 1 *



* 1 4 8 3 7 5 9 2 0 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00014837592009006

Borrower's address is
20 TOULON, LAGUNA NIGUEL, CA 92677
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Countrywide Bank, N.A.
Lender is a NATL. ASSN.
organized and existing under the laws of THE UNITED STATES .
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314 .
(D) "Trustee" is
ReconTrust Company, N.A
225 West Hillcrest Dr., MSN TO-02, Thousand Oaks91360 .
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 14, 2006 . The Note states that Borrower owes Lender
ONE MILLION and 00/100

Dollars (U.S. $ 1,000,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than OCTOBER 01, 2036 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [ ] Condominium Rider  [ ] Second Home Rider
[ ] Balloon Rider  [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider  [ ] Biweekly Payment Rider  [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

-6A(CA) (0207)   CHL (08/05)   Page 2 of 16   Form 3005 1/01

DOC ID #: 0001483792009006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of                    ORANGE                    :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.


Parcel ID Number: 656 035 10                           which currently has the address of
                   753 BARRACUDA WAY, LAGUNA BEACH                           ,
                                    [Street/City]
California     92651      ("Property Address"):
             [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(CA) (0207)        CHL (08/05)           Page 3 of 16                    Form 3005 1/01

Prepared by: STEVE SEREPONGKY

**Countrywide Bank, N.A.**

Branch #: 0000909
20970 WARNER CENTER LN, STE. C
WOODLAND HILLS, CA 91367
Phone: (800)299-3324
Br Fax No.: (818)888-2270

DATE:        09/14/2006
CASE #:
DOC ID #:    0001#837592009006
BORROWER: BRIAN MCLAUGHLIN
PROPERTY ADDRESS: 753 BARRACUDA WAY
              LAGUNA BEACH, CA 92651

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





NO. 03381698

EXHIBIT "A"

LOT 126 OF TRACT NO. 6029, IN THE CITY OF LAGUNA BEACH, COUNTY
OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
230, PAGES 21 TO 26 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES IN AND
UNDER OF THAT MAY BE PRODUCED FROM A DEPTH BELOW 500 FEET FROM
THE SURFACE OF SAID LAND AND PROVIDED THAT SUCH RESERVATION
SHALL NOT ENTITLE GRANTEE, HIS SUCCESSORS OR ASSIGNS, TO ANY
RIGHT OF ENTRY UPON THE SURFACE OF SAID LAND FOR THE PURPOSE OF
MINING, DRILLING, EXPLORING OR EXTRATING SUCH OIL, GAS AND OTHER
HYDROCARBON SUBSTANCES OR OTHER USE OF RIGHTS IN OR TO ANY
PORTION OF THE SURFACE OF SAID LAND TO A DEPTH OF 500 FEET
BELOW THE SURFACE THEREOF, PROVIDED, HOWEVER GRANTEE, HIS
SUCCESSORS OR ASSIGNS SHALL HAVE THE RIGHT TO DRILL INTO,
LOCATE WELLS IN AND PRODUCE OIL AND GAS AND OTHER HYDROCARBON
SUBSTANCES FOR ANY PORTION OF SAID LAND WHICH BE A DEPTH BELOW
500 FEET FROM THE SURFACE THEREOF, AS SET FORTH IN AN
INSTRUMENT RECORDED MARCH 24, 1967 IN BOOK 8208 PAGE 714
OFFICIAL RECORDS.

PARCEL NO: 656-035-10

DOC ID-#: 0001483759200 9006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)        CHL (08/05)          Page 4 of 16                    Form 3005  1/01

DOC ID #: 00014837592009006

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)      CHL (08/05)      Page 5 of 16      Form 3005 1/01

DOC ID #: 00014837592009006

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

DOC ID #: 00014837592009006

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

DOC ID #: 0001483759200906

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

DOC ID #: 0001483759200906

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

DOC ID #: 0001483759200900

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID #: 00014837592009006

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)          CHL (08/05)          Page 11 of 16          Form 3005 1/01

DOC ID #: 00014837592009006

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

DOC ID #: 00014837592009006

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

DOC ID #: 00014837592009006

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC ID #: 00014837592009006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
BRIAN MCLAUGHLIN                                    -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

_____ (Seal)
                                                   -Borrower

DOC ID #: 00014837592009006

State of California
County of Orange

} ss.

On September 14, 2006 before me, Armida Godinez
Notary Public, personally appeared

Brian McLaughlin

personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Armida Godinez (Seal)

ARMIDA GODINEZ
Commission # 1422022
Notary Public - California
Los Angeles County
My Comm. Expires Jun 3, 2007

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

06001127                    00014837592009006
[Escrow/Closing #]              [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this  FOURTEENTH              day of
SEPTEMBER, 2006    , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

753 BARRACUDA WAY
LAGUNA BEACH, CA 92651
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

• **PayOption MTA ARM Rider**
**1E310-XX (09/05)(d)**                  Page 1 of 6





* 2 3 9 9 1 *                    * 1 4 8 3 7 5 9 2 0 0 0 0 0 0 1 E 3 1 0 *

DOC ID #: 0001483759200

**2. INTEREST**

   **(A)  Interest Rate**
   Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of       8.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of       2.000 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3.  The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

   **(B) Interest Rate Change Dates**
   The interest rate I will pay may change on the first                day of JANUARY, 2007         , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

   **(C) Index**
   Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(D) Calculation of Interest Rate Changes**
   Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding           THREE & 80/100  percentage point(s) (     3.800 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

   **(A) Time and Place of Payments**
   I will make a payment every month.


* PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 2 of 6

DOC ID #: 00014837592009006

I will make my monthly payments on the FIRST                    day of each month
beginning on November, 2006        . I will make these payments every month until I have
paid all the Principal and interest and any other charges described below that I may owe under the
Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before Principal. If, on OCTOBER 01, 2036         , I still owe amounts under the Note, I will pay
those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $ 3,696.19                         , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the
first                    day of NOVEMBER, 2007             , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than   7.500% of my prior
monthly payment. This    7.500% limitation is called the "Payment Cap." This Payment Cap
applies only to the Principal and interest payment and does not apply to any escrow payments Lender
may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying
it by the number    1.075 . The result of this calculation is called the "Limited Payment." Unless
Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be
the lesser of the Limited Payment and the Full Payment.

● PayOption MTA ARM Rider
1E310-XX (09/05)                         Page 3 of 6

DOC ID #: 0001483759200906

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent (          115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth          Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

  (i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

  (ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

● PayOption MTA ARM Rider
1E310-XX (09/05)                Page 4 of 6

DOC ID #: 00014837592009006

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

\* **PayOption MTA ARM Rider**
1E310-XX (09/05)                    Page 5 of 6

DOC ID #: 00014837592009006

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   -Borrower
BRIAN MCLAUGHLIN

_____   -Borrower

_____   -Borrower

_____   -Borrower

* PayOption MTA ARM Rider
1E310-XX (09/05)                     Page 6 of 6

# ILLEGIBLE NOTARY SEAL DECLARATION

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: _ARMIDA GODINEZ_

NOTARY COMMISSION NUMBER: _1422022_

MANUFACTURER/VENDOR IDENTIFICATION NUMBER: _NNA1_

DATE COMMISSION EXPIRES: _June 3, 07_

COUNTY WHERE BOND IS FILED: _Los Angeles_

PLACE OF EXECUTION OF
THIS DECLARATION: _ROSEMEAD, CA._

DATE: _9/15/06_

NAME OF PERSON EXECUTING
THIS DECLARATION: _M. Massarotti_

## LANDSAFE TITLE        _M.Massarotti_

Signature of Person Executing this declaration

# EXHIBIT 2

Recording Requested By:
**Bank of America**
Prepared By: **Lori Fitch**
**450 E. Boundary St.**
**Chapin, SC 29036**
**888-603-9011**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

DocID# 61214837592011138

Property Address:
**753 Barracuda Way**
**Laguna Beach, CA 92651-4123**
CA0-ADT 14424938          9/2/2011

**Recorded in Official Records, Orange County**
**Tom Daly, Clerk-Recorder**
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ 12.00
2011000463859 10:17 am 09/20/11
47 412 A32    2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

*This space for Recorder's use*

MIN #: 1001337-0001682589-8          MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING LP FKA COUNTRYWIDE HOME LOANS SERVICING LP** whose address is **9062 OLD ANNAPOLIS RD, COLUMBIA, MD 21045** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE BANK, N.A.** |
| Original Borrower(s): | **BRIAN MCLAUGHLIN, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY** |
| Original Trustee: | **RECONTRUST COMPANY, N.A** |
| Date of Deed of Trust: | **9/14/2006** |
| Original Loan Amount: | **$1,000,000.00** |

Recorded in **Orange** County,CA on: 9/21/2006, book N/A, page N/A and instrument number **2006000628966**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
_9-6-2011_

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

**Martha Muñoz, Vice President**

State of **California**
County of **Ventura**

On 9-6-11 before me, Barbara J. Gibbs , Notary Public, personally appeared
**Martha Munoz**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

*WITNESS* my hand and official seal.

Notary Public: Barbara J. Gibbs (Seal)
My Commission Expires: 9-9-2013

BARBARA J. GIBBS
Commission # 1864186
Notary Public - California
Los Angeles County
My Comm. Expires Sep 9, 2013

ATTACHED: ASSIGNMENT OF DEED OF TRUST
BORROWER(S): BRIAN MCLAUGHLIN

# EXHIBIT 3

LANDSAFE TITLE

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||  18.00

**2011000496218** 08:00am 10/06/11

65 404 N15 4

0.00 0.00 0.00 0.00 9.00 0.00 0.00 0.00

RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Arnold Recinos
TS No. 11-0114355
Title Order No. 11-0095154

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is  $96,788.73, as of 10/05/2011 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

TS No. 11-0114355

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP**
C/O Bank of America, N.A.
400 National way
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

# YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 09/14/2006, executed by BRIAN MCLAUGHLIN, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 09/21/2006, as Instrument No. 2006000628966 (or Book , Page ) of Official Records in the Office of the County Recorder of Orange County, California.
Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 1,000,000.00.
That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL, INTEREST AND IMPOUNDS WHICH BECAME DUE ON  11/01/2010  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL, INTEREST AND IMPOUNDS, TOGETHER WITH ALL LATE CHARGES, PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY, INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS FEES.  IN ADDITION, THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  10/01/2036  AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 11-0114355

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: October 05, 2011

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

~~Authorized Signer~~ AD                          OCT 05 2011

ARAYA DHANASOPON

Assistant Vice President

*Form nodorig_2011.3.0_03/2011*

**Bank of America**

**Home Loans**

Notice Date:    September 27, 2011

11-0114355

Brian McLaughlin
3 White Sail
Laguna Niguel, CA 92677

Property Address:
753 Barracuda Way
Laguna Beach, CA 92651

## CALIFORNIA DECLARATION

I, O. Osba_____, MTG SERVICING SPECIALIST I of Bank of America, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

BANK OF AMERICA HOME LOANS

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The previsions of California Civil Code §2923.5 do not apply because State Reason.

9/07/11   Getzville N.Y
Date and Place

Name of Signor

CA-DECLARATIONS  8638/9508  8/27/2008

**EXHIBIT 4**

**LANDSAFE TITLE**

Recording Requested By:
RICHMOND MONROE GROUP

When Recorded Return To:

RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

*11-0095154*

Recording Requested By: DPS
On Behalf Of: " L S – S V "



Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

12.00

*SR00047188515*

**2012000206689 08:00am 04/12/12**

65 404 A32 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Orange, California   REFERENCE #: 352852278   "MCLAUGHLIN"
INVESTOR #: U61
MERS #: 100133700016825898 VRU #: 1-888-679-6377

For Value Received, BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT at C/O SELECT PORTFOLIO SERVICING 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115 hereby grants, assigns and transfers to WELLS FARGO BANK, N.A., AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-12 at C/O SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115 all beneficial interest under that certain Deed of Trust dated 09/14/2006 , in the amount of $1,000,000.00, executed by BRIAN MCLAUGHLIN, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, N.A. and Recorded: 09/21/2006 as Instrument No.: 2006000628966 in Orange County , State of California and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT
On _____ APR 0 4 2012

JEFF YOUNG, VICE PRESIDENT



SELECT PORTFOLIO SERVICING, INC.
Corporate
1989
SEAL
UTAH

*PB1*PB1AMRC*04/02/2012 11:15:36 AM* AMRC2BAMRC00000000000000000512927* CAORANG* 352852278 CASTATE_TRUST_ASSIGN_ASSN *PB1*PB1AMRC*

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF UTAH
COUNTY OF SALT LAKE

On _____ APR 0 4 2012 _____, before me, KIMBERLY CLARK, a Notary Public in and for SALT LAKE in the State of UTAH, personally appeared JEFF YOUNG, VICE PRESIDENT, BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, BY SELECT PORTFOLIO SERVICING, INC. ITS ATTORNEY IN FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

KIMBERLY CLARK
Notary Expires: 12/11/2015  #650831

KIMBERLY CLARK
Notary Public State of Utah
My Commission Expires on:
December 11, 2015
Comm. Number: 650831

(This area for notarial seal)

BILL KOCH

*PB1*PB1AMRC*04/02/2012 11 15:36 AM* AMRC2BAMRC00000000000000000512927* CAORANG* 352852278 CASTATE_TRUST_ASSIGN_ASSN *PB1*PB1AMRC*

# EXHIBIT 5

LANDSAFE TITLE

**RECORDING REQUESTED BY:**
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

**WHEN RECORDED MAIL TO:**
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

TS No. 11-0114355
Title Order No. 11-0095154



Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

**12.00**

* S R 0 0 0 4 7 6 1 8 0 6 5 *

**2012000240556 08:00am 04/27/12**

86 404 N34 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

APN No. 656-035-10

## NOTICE OF TRUSTEE'S SALE
### YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 09/14/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Notice is hereby given that RECONTRUST COMPANY, N.A., as duly appointed trustee pursuant to the Deed of Trust executed by BRIAN MCLAUGHLIN, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, dated 09/14/2006 and recorded 09/21/2006, as Instrument No. 2006000628966, in Book , Page of Official Records in the office of the County Recorder of ORANGE County, State of California, will sell on 05/21/2012 at 12:00 PM, At the North front entrance to the County Courthouse, 700 Civic Center Drive West, Santa Ana, CA 92701 at public auction, to the highest bidder for cash or check as described below, payable in full at time of sale, all right, title, and interest conveyed to and now held by it under said Deed of Trust, in the property situated in said County and State and as more fully described in the above referenced Deed of Trust. The street address and other common designation, if any, of the real property described above is purported to be: 753 BARRACUDA WAY, LAGUNA BEACH, CA 92651. The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

The total amount of the unpaid balance with interest thereon of the obligation secured by the property to be sold plus reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $1,252,788.58. It is possible that at the time of sale the opening bid may be less than the total indebtedness due.

In addition to cash, the Trustee will accept cashier's checks drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state.

Said sale will be made, in an "AS IS" condition, but without covenant or warranty, express or implied, regarding title, possession or encumbrances, to satisfy the indebtedness secured by said Deed of Trust, advances thereunder, with interest as provided, and the unpaid principal of the Note secured by said Deed of Trust with interest thereon as provided in said Note, plus fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Trustee's Sale duly recorded with the appropriate County Recorder's office.

### NOTICE TO POTENTIAL BIDDERS

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on a property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the lender may hold more than one mortgage or deed of trust on the property.

*Form nos_2012.3.0_03/2012*

TS No. 11-0114355
APN No. 656-035-10

## NOTICE TO PROPERTY OWNER

The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 1-800-281-8219 or visit this Internet Web site www.recontrustco.com, using the file number assigned to this case 11-0114355. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
Phone/Sale Information: (800) 281-8219

By: _____          APR 2 5 2012

Rosselin Rincon, Asst Vice President

RECONTRUST COMPANY, N.A. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

*Form nos_2012.3.0_03/2012*

# EXHIBIT 6

1  Joseph La Costa, Esq.
   CBN 108443
2  7840 Mission Center Court, Suite 104
   San Diego, CA 92108
3  (619) 922-5287

4  Attorney for Plaintiff

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**04/12/2012** at 08:29:28 AM

Clerk of the Superior Court
By Enrique Veloz,Deputy Clerk

5           **SUPERIOR COURT OF CALIFORNIA**
6       **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

7  **BRIAN McLAUGHLIN; DATACOM**          )   Case No: 30-2012-00561729-CU-CO-CJC
                                          )
8  **INVESTMENT COMPANY, INC;**           )
                                          )
9            Plaintiff,                    )   **COMPLAINT FOR DECLARATORY RELIEF**
                                          )   **(VERIFIED)**
10       vs.                               )
                                          )
11 **WELLS FARGO BANK, NATIONAL**         )   Amount demanded exceeds $25,000.00
                                          )
12 **ASSOCIATION; BANK OF AMERICA,**      )   UNLIMITED CIVIL CASE
                                          )
13 **NATIONAL ASSOCIATION; RECONTRUST**   )
                                          )
14 **COMPANY, NATIONAL ASSOCIATION;**     )   Judge: Judge Thierry Patrick Colaw
                                          )   Dept.:
15 **AND DOES 1 THROUGH 10, INCLUSIVE,**  )
                                          )   Complaint Filed:
16           Defendants.                   )

17

18 Plaintiff alleges:

19                    **STATEMENT OF FACTS**

20      1.  Plaintiff BRIAN McLAUGHLIN is a resident of the City of Laguna Beach, California

21          County of Orange, and State of California

22      2.  Plaintiff DATACOM INVESMENT COMPANY, INC is a California Corporation, with

23          offices located at 19 Hubbard Way, Trabuco Canyon, California 92679.

24      3.  Defendant WELLS FARGO BANK, NATIONAL ASSOCIATION is a South Dakota based

25          corporation with offices located at 101 North Phillips Avenue, Sioux Falls, South Dakota

26          57104.

27      4.  Defendant BANK OF AMERICA, NATIONAL ASSOCIATION, is a North Carolina based

28          corporation with offices located at 214 North Tryon Street, Charlotte, North Carolina 28255.

                              ~ 1 ~

5.  Defendant "Recontrust Company, National Association" purports to be a California based corporation with offices located at 1800 Tapo Canyon Road, CA6-914-01-94, Simi Valley, CA 93063, however the Secretary of State of the State of California has no such company registered or licensed to do business in California.

6.  Defendants **DOES 1 through 10**, inclusive, are sued herein under fictitious names for the reason that the true names of said defendants are unknown to the Plaintiffs, and Plaintiffs will ask leave to amend this Complaint when the true names are ascertained.

7.  Plaintiff is informed, and believes and thereon alleges that at all times herein mentioned all named defendants herein were and are  the principal and agent of each of the remaining defendants and was at all times acting within the purpose, scope and consent of their co-defendants.

## STATEMENT OF FACTS

8.  Plaintiff Brian McLaughlin purchased the subject property located at 753 Barracuda Way, Laguna Beach, California 92651on or about September 14, 2006.

9.  At the time of the purchase of the property a mortgage loan was extended  by Countrywide Home Loans, Inc.

10. Thereafter, Plaintiff Datacom Investment Company extended a second mortgage subordinate to the mortgage interest of Countrywide Home Loans, Inc on or about June 13, 2008.

11. In late 2009 Defendant Bank of America, acting as a "servicer", and purporting to represent the interests of the note holder, caused to be executed a "modification" of the mortgage contract of June 13, 2008.

12. Since no subordination agreement was executed as to the purported modification, Plaintiff Datacom Investment Company asserts it is now in first position relative to its security interest on the property, superior to the interests asserted by or on behalf of Countrywide Home Loans, Inc, since any modification, if effective, served to change the security interests of the respective lien claimants.

13. The Defendants have undertaken conduct consistent with a continued belief their security rights are superior to those of the Plaintiff Datacom Investment Company.

14. Notwithstanding all of the above, Plaintiff McLaughlin has a real and legitimate concern that the current claimants to the loan proceeds of the first loan are the real and legitimate successors and/or assigns of the interests of Countrywide Home Loans, Inc.

15. The Defendant Bank of America, N.A. has caused multiple demands for payments to be made, and Plaintiff McLaughlin has made numerous payments, in excess of $25,000 to be made based on the demands

16. The Plaintiff, Brian McLaughlin, has previously requested documentation of the Defendant's claimed right to collect payments under the June 13, 2008 note executed in favor of Countrywide Home Loans, Inc. but said documentation has not been provided, and Plaintiff McLaughlin now believes the Defendants are not the legitimate successors in interest to the mortgage note executed on September 14, 2006 based on said failure and refusal together with news reports indicative that many loan servicers do not have a right to collect the payments they seek.

17. Based on the above, the Plaintiff, McLaughlin, is informed, believes, and on said information and belief asserts that the Defendants, and each of them, are not the successors of Countrywide Home Loans, Inc with respect to the mortgage executed on September 14, 2006.

18. In order to properly determine the rights and liabilities of the parties, the Plaintiffs hereto file this pending cause of action to determine conclusively if the Defendants are in fact the successors of Countrywide Homes Loans, Inc. and further whether or not the deed of trust executed in favor of Datacom Investment Company, Inc is in first or second position relative to the property in question.

## COMPLAINT FOR DECLARATORY RELIEF

19. The Statement of facts as it relates to identification of the parties and as fully forth in Paragraphs 1 to 7 is incorporate herein by reference as though fully set forth herein, as well as the remaining Statement of Facts set forth above.

~ 3 ~

McLaughlin v. Wells Fargo - Verified Complaint for Declaratory Relief

20. An actual controversy has arisen and now exists between the Plaintiffs and the Defendants concerning their respective rights and duties with respect to the mortgage notes secured by Plaintiff's property, and the related Note as described in Paragraph 8 as follows.

21. The Plaintiff, McLaughlin believes that none of the Defendants are the actual successors to Countrywide Home Loans, Inc, while the Defendants claim they are in fact the successors.

22. The Plaintiff, Datacom Investment Company, Inc., believes it has a first position security interest in the property in question, while the Defendants maintain they have the first position.

23. The above articulated controversies are ripe for adjudication and resolution because the parties have, at present, not made any material change in position relative to their respective interests, and an adjudication of the true status of the parties at this time will prevent future litigation of claims that will certainly arise. Adjudication at this time serves to preserve the status quo, and prevents damage to both Plaintiffs and Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against **WELLS FARGO BANK, NATIONAL ASSOCIATION; BANK OF AMERICA, NATIONAL ASSOCIATION; RECONTRUST COMPANY** relative to the Cause of Action for Declaratory Relief the Plaintiff seeks a Declaration that:

    1) The Defendants, and each of them, are not the successor in interest to "COUNTRYWIDE HOME LOANS, INC. relative to the mortgage note referenced above.

    2) The Plaintiff, Datacom Investment Company, Inc. has a first lien position regarding the property in question.

    3) The Defendants, and each of them, are not the present successor, assign, or Lender named in the Note identified above.

    4) That all Defendants named herein be ordered to comply with the orders of this court to the extent they are the agents, and/or representatives of the other Defendants.

    5) For costs of suit herein incurred;

~ 4 ~

McLaughlin v. Wells Fargo – Verified Complaint for Declaratory Relief

6)   For such other and further relief as the court may deem proper.

Dated this: April 9, 2012

_____

Joseph La Costa, Esq
Attorney for Plaintifs

McLaughlin v. Wells Fargo – Verified Complaint for Declaratory Relief

## VERIFICATION

I, BRIAN McLAUGHLIN, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my knowledge, except as to this matters which are stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at LAGUNA BEACH, California.

Dated this: April 9, 2012

Brian McLaughlin
Plaintiff

## VERIFICATION

I, Alan Sherman, am a Corporate Officer for Datacom Investment Company, Inc. a Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same is true of my knowledge, except as to this matters which are stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed at LAGUNA BEACH, California.

Dated this: April 9, 2012

Alan Sherman, Officer Datacom Investment Company, Inc.
Plaintiff

~ 6 ~

McLaughlin v. Wells Fargo - Verified Complaint for Declaratory Relief

# EXHIBIT 7

1  Joseph La Costa, Esq.
   CBN 108443
2  7840 Mission Center Court, Suite 104
   San Diego, CA 92108
3  (619) 922-5287

4  Attorney for Plaintiffs

5
                    **SUPERIOR COURT OF CALIFORNIA**
6          **COUNTY OF ORANGE – CENTRAL JUSTICE CENTER**

7

8                                    )   CASE NO. 30-2012-00561729-CU-CO-CJC
                                     )
9  **BRIAN McLAUGHLIN; DATACOM**     )   **APPLICATION FOR TEMPORARY**
   **INVESTMENT COMPANY, INC;**      )   **RESTRAINING ORDER AND ORDER TO**
10                                   )   **SHOW CAUSE WHY PRELIMINARY**
                                     )   **INJUNCTION SHOULD NOT ISSUE**
11     **Plaintiff,**                )
                                     )
12                                   )
                                     )
13     **vs.**                       )   DATE: 5/18/2012
                                     )   TIME: 1:30
14  **WELLS FARGO BANK, NATIONAL**   )   DEPT: C-25
    **ASSOCIATION; BANK OF AMERICA,**)   I/C JUDGE: Hon. Thierry P. Colaw
15  **NATIONAL ASSOCIATION;**        )
    **RECONTRUST COMPANY, NATIONAL** )
16  **ASSOCIATION; AND DOES 1 THROUGH**)
    **10, INCLUSIVE,**               )
17                                   )
                                     )
18     **Defendants.**               )
                                     )
19                                   )
                                     )
20  ─────────────────────────────── )

21      Plaintiffs **BRIAN McLAUGHLIN and DATACOM INVESTMENT COMPANY, INC**

22  hereby apply for a temporary restraining order and order to show cause why a preliminary

23  injunction should not issue preventing defendants, and each of them, from continuing with their

24  nonjudicial foreclosure, publishing or recording a Notice of Trustee's Sale, and/or conducting a

25  Trustee's Sale of the Subject Property, presently scheduled for May 21, 2012.

26

27

28                                       1
              **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY**
                             **PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1    This application is made and based upon this application, the Memorandum of Points and

2    Authorities in Support of Application For Temporary Restraining Order And Order To Show Cause

3    Why Preliminary Injunction Should Not Issue, submitted herewith; the Declaration of Joseph La

4    Costa in Support of Application For Temporary Restraining Order And Order To Show Cause Why

5    Preliminary Injunction Should Not Issue, submitted herewith; and such other and further evidence

6    and matter as shall be considered by the court.

7

8

9

10   Dated: May 10, 2012                         _____

11                                                JOSEPH LA COSTA
                                                  Attorney for Plaintiffs
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                2
               APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY
                               PRELIMINARY INJUNCTION SHOULD NOT ISSUE

# EXHIBIT 8

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 18 2012

ALAN CARLSON, Clerk of the Court

BY C. RAMOS

## SUPERIOR COURT OF CALIFORNIA
### COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| BRIAN McLAUGHLIN; DATACOM INVESTMENT COMPANY, INC; | CASE NO. 37-2012-00561729-CU-CO-CJC |
| Plaintiff, | TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE |
| vs. | |
| WELLS FARGO BANK, NATIONAL ASSOCIATION; BANK OF AMERICA, NATIONAL ASSOCIATION; RECONTRUST COMPANY, NATIONAL ASSOCIATION; AND DOES 1 THROUGH 10, INCLUSIVE, | DATE: 5/18/2012<br>TIME: 1:30<br>DEPT: C-25<br>I/C JUDGE: Hon. Thierry P. Colaw |
| Defendants. | |

The Court having read and considered plaintiffs **BRIAN McLAUGHLIN and DATACOM INVESTMENT COMPANY, INC** verified Complaint, Application for Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Be Issued, and the papers in support thereof, and good cause appearing therefore:

1

1    IT IS HEREBY ORDERED that, pending hearing upon the order to show cause why a

2  preliminary injunction should not issue, defendants **WELLS FARGO BANK, NATIONAL**

3  **ASSOCIATION; BANK OF AMERICA, NATIONAL ASSOCIATION; RECONTRUST**

4  **COMPANY, NATIONAL ASSOCIATION** and each of them, and all persons acting under, in

5  concert with, or for them, from noticing or recording any notice of trustee's sale, or conducting any

6  trustee's sale under power of sale, of the real property owned by plaintiff BRIAN MCLAUGHLIN,

7

8  commonly known as 753 Barracuda Way, Laguna Beach, California 92651.

9    IT IS FURTHER ORDERED that **WELLS FARGO BANK, NATIONAL**

10  **ASSOCIATION; BANK OF AMERICA, NATIONAL ASSOCIATION; RECONTRUST**

11  **COMPANY, NATIONAL ASSOCIATION** and each of them, and all persons acting under, in

12  concert with, or for them, show cause, if any they have, why a preliminary injunction to be

13

14  enforceable until the trial of this action should not issue, prohibiting them from noticing or

15  recording any notice of trustee's sale, or conducting any trustee's sale under power of sale, of the

16  real property owned by plaintiffs BRIAN MCLAUGHLIN, commonly known as 753 Barracuda

17  Way, Laguna Beach, California 92651.   *T.S. 2011—011—4355*

18                                          *APN 656-055—10*

19

20  Dated: May 18, 2012

21                                          Hon. Thierry P. Colaw
                                            JUDGE OF THE SUPERIOR COURT
22

23

24

25

26

27

28

2

# EXHIBIT 9



1  Joseph La Costa
   CB#: 108443
2  7840 Mission Center Court, Suite #104
3  San Diego, CA 92108
   (619) 922-5287
4
5  Attorney for Plaintiffs
6
7          SUPERIOR COURT OF THE STATE OF CALIFORNIA
                      COUNTY OF ORANGE
8
9                                    )  Case No: 30-2012-00561729-CU-CO-CJC
                                     )
10 Brian McLaughlin; Datacom Investment )
                                     )  MEMORANDUM OF POINTS AN
11 Company, Inc.,                     )  AUTHORITIES IN SUPPORT OF
                                     )  PLAINTIFFS' REQUEST FOR A
12             Plaintiffs,            )  PRELIMINARY INJUNCTION
                                     )
13        vs.                        )
                                     )  Dept: C-25
14 Wells Fargo Bank, National Association; )
                                     )  Judge: Hon. Thierry P. Colaw
15 Bank of America, National Association; )
                                     )
16 Recontrust Company, National Association; )
                                     )
17 and Does 1 through 10 inclusive,   )
                                     )
18             Defendants.            )
                                     )
19
20  I.  **STATEMENT OF THE CASE**
21  1. Plaintiff McLaughlin alleges that Defendants are third-party strangers to his mortgage
22     loans and have no ownership interest entitling them to collect payment or declare a
23     default. By hiding behind the complexities of the mortgage finance system, Defendants
24     brazenly attempt to dupe Plaintiff (and millions of other homeowners) into believing they
25     have the right to collect on a debt in which Defendants have no ownership interest. In an
26     attempt to further their fraudulent scheme and create the air of propriety surrounding their
27     debt collection efforts, Defendants have resorted to "papering the file" by fabricating an
28     "Assignment of Deed of Trust, employing individuals who have no authority to or

                              ~ 1 ~

personal knowledge of the facts to which they attest, and falsely representing to Plaintiff **and to the Court** that they have the right to take Plaintiff's property away. Not only is Defendants' conduct a criminal violation of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4)[1], and an affront to the long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system. Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, discovery the true holder in due course of his Promissory Note ("Note"), and determine the status of Defendants' claims.

2. The Defendants seek to characterize the underlying cause of action as a "foreclosure defense" subject to the comprehensive statutory framework of the California non-judicial statutes. The Defendants attempt to broadly paint the Plaintiffs with that brush is patently wrong, since the cause of action in no manner seeks to prevent a real party in interest from asserting a right to collect on the Plaintiff's note and deed of trust.

3. The cause of action first relates exclusively to question the Defendants claimed standing to collect any payment from the Plaintiff, and more importantly to determine who is legitimately entitled to seek and obtain those payments. The cause of action also seeks a determination as to the appropriate priority of the various competing lien interests on the property.

4. The Plaintiff seeks to determine who his creditor is, and what the proper priority of debt really is regarding the secured obligations.

5. The Defendant, in a truly arrogant and underhanded manner, seeks to prevent justice from seeing the light of day by simply taking the property in question. The Plaintiffs simply seek a prompt resolution of his issues by way of a claim for Declaratory Relief, rather than file a complaint seeking multiple causes of action an damages, although the

---

[1] Cal. Penal Code section 532(f)(a) provides that "a person commits a mortgage fraud if, with the intent to defraud, the person does any of the following…(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

~ 2 ~

Plaintiff certainly reserves the right to pursue all additional remedies at the appropriate time.

6. The request for a Preliminary Injunction, therefore, only seeks to maintain the status quo until the cause of action may be heard in the expedited manner provided by law.

## II. INTRODUCTION

7. During the Mortgage Boom Era of 2002 to 2007, Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American Dream – home ownership. Mortgage lenders and investment banks aggressively lured the American people into predatory loans with teaser interest rates and into purchasing homes with inflated appraisals and under the promise that the booming real estate market would continue to boom. Wall Street took the soon to be toxic loans and bundled them into "Mortgage Backed Securities" through a process known as "Securitization." These "securities" were then sold to investors in the form of certificates, whereby the investors became the "Certificateholders" of the securities that were to be fed by the toxic loans.

8. Knowing that the predatory loans would soon default and turn into toxic assets, Wall Street placed their bets accordingly and bought exotic insurance products in the form of "Credit default Swaps.[2] Thus, when the Mortgage Boom turned into a Mortgage

---

[2] In 1995, JPMorgan created the Credit Default Swap (CDS). Essentially, a CDS is a form of insurance intended to protect the buyer of the policy in case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the case value of the defaulted loan. The main difference between a traditional insurance policy and a CDS is that anyone can purchase a CDS, even those who have no direct "insurable interest" in the lender. CDSs were instrumental during the housing bubble because one the banks ran out of creditworthy borrowers, they had to turn to uncreditworthy "subprime" borrowers. To avoid losses from default, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. To induce the investors to buy, these securities, the securities were then "insured" with credit default swaps. CDSs allowed investors to bet against the average American to default on their mortgage with little risk. CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on these loans was much higher. Notably, AIG Insurance Company ("AIG"), an insurance carrier who onwed a considerable market share of these CDS policies, was unable to make good on these policies after the housing bubble burst resulting in

~ 3 ~

Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

9.  However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all. Under the standard mode, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders"). These "true sales" allow the original lenders to move the notes off the books, eliminating the need to maintain capital-adequacy reserves against default. The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

10. The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) The Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common loa trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

11. An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering. This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default. In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process – the promissory note and the security instrument (deed of trust or mortgage).

---

AIG seeking a government bailout. See Justin Fox, Why the Government Wouldn't let AIG Fail?, TIME Business (September 16, 2008) http://www.time.com/time/business/article/0,8599,1841699,00.html. Thus, in the end, it was the American taxpayer who bore the burden of these CDS.

~ 4 ~

12. Here, Plaintiff alleges that the "true sales" never took place die to the failure to follow the basic legal requirements for the transfer of a negotiable instrument and thereby Defendants did not acquire any legal, equitable, and pecuniary interest in Plaintiff McLaughlin's Note and Mortgage. As a result, thereof the Defendants, which purport to be Plaintiff McLaughlin's creditor, actually has no secured or unsecured right, title, or interest in McLaughlin's Note and Mortgage, and has no right to collect mortgage payments, demand mortgage payments, or report derogatorily against McLaughlin's credit.[3]

13. Plaintiff further alleges that, on information and belief, the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-12 (hereinafter "Harborview Trust") that purportedly owns Plaintiff's Note and Mortgage has been dissolved due to the disbursement and receipt of mortgage insurance payouts to Defendants and the Certificateholders (including, but not limited to, Credit Default Swaps and other mortgage insurance products). As a result of these mortgage insurance payouts the Defendants have been paid in full on Plaintiff's debt obligation, if any.

14. Nonetheless, the Defendants attempt to take advantage of the complex structured financial system to defraud yet another homeowner. Plaintiff anticipated that the Defendants would will seek a Court-sanctioned bailout by submitting a blatently fabricated "Assignment" via a Request for Judicial Notice, thereby committing a fraud on the Court, and attempting to further mislead Plaintiff into believing the Defendants are his actual creditor, and is entitled to enforce his obligation.

---

[3] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in U.S. Bank vs. Ibanez, SJC-10694, 2011 WL 38071. In Ibanez, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages. The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

~ 5 ~

15. Plaintiff does not dispute that he owed money on his mortgage obligation.[4] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust, and specifically what rights, if any the Defendants have to claim a secured or unsecured interest in Plaintiff's Note or Mortgage.

16. Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) his counsels research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Assignment of Deed of Trust" signed by Martha Munoz ; and an audit of Defendant's filings with the Securities and Exchange Commission ("SEC"), including Defendants's Prospectus and the Pooling and Servicing Agreement ("PSA").

17. On or about September 14, 2006 McLaughlin executed a Note and Mortgage in favor of Countrywide Bank, N.A. (hereinafter Countrywide), obtaining a loan on the Property. MERS was named on the Deed of Trust as the purported "nominee" and "beneficiary" of the Deed of Trust.

18. Plaintiff alleges and believes and thereon that on or around the time of origination of McLaughlin's loan, Countrywide attempted to securitize and sell his loan to another entity or entities. That entity was not any of the Defendants or the Harborview Trust, who now appears to claim an interest in the note.

19. Plaintiff alleges on information and belief that Countrywide never sold, transferred, or granted his Note or Mortgage to the Sponsor, Depositor, or any named Defendant, and that the Defendants are merely a third-party strangers to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can

---

[4] However, simply because Plaintiff does not dispute this fact, the Court should not condone [D1A]'s and [D2A]'s fraudulent and predatory mortgage servicing practices and allow it to collect on money it is not owed. Simply put, the Court should not allow the Defendants to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

~ 6 ~

demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to any named Defendant. In fact, Plaintiff has requested that the Defendant verify the validity of his debt. Although this information should be readily available to any mortgage servicer, the Defendants have failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

20. The parties involved in the alleged Securitization and transfer of Plaintiff's Note and Mortgage failed to adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitization Trust (or its custodian) on or before the "closing date" indicated on the Prospectus. The "closing date" is the date by which all of the Notes and Mortgages must be transferred into the Harborview Trust. The failure to do so results in the Note and Mortgage not being part of the trust res, such that it is not a loan that any Defendant can attempt to collect on.

21. On or about September 6, 2011 "Martha Munoz", purportedly the "Vice President" for MERS, allegedly executed a document purporting to be an "Assignment of Deed of Trust" ("Assignment"), in which she intentionally misrepresented to Plaintiff in writing that Defendant Bank of America, National Association had acquired an interest in his Note and Mortgage, and that MERS had endorsed, transferred, and negotiated his Note to Bank of America, National Association. In fact, no such transfer of interest took place, a fact that is well known to the Defendants. *See* **Exhibit "2"** to Defendants' Request for Judicial Notice. Plaintiff specifically disputes the contents and authenticity of this document.

22. Thereafter, on or about April 4, 2012, "Jeff Jones" purportedly on behalf of Bank of America, National Association, executed and caused to be recorded a "Corporate Assigment of Deed of Trust" in favor of Defendant Wells Fargo Bank, National Association, as trustee, on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Loan pass-through certificates series 2006-12. In fact, no such transfer of

interest took place, a fact that is well known to the Defendants. *See* **Exhibit "4"** to
Defendants' Request for Judicial Notice. Plaintiff specifically disputes the contents and
authenticity of this document.

23. Plaintiff alleges that the April 4, 2012 "assignment" was a legal nullity since the prior
"assignment" was void, and Bank of America, N.A. had no interest to "assign" to Wells
Fargo Bank.

24. In addition, Plaintiff alleges that the April 4, 2012 "assignment" was executed after the
closing date of the Harborview Trust in the year 2006. The trust was forbidden by law
from accepting any assignment after it closed in the year 2006.

25. Both of the dubious "assignments" noticed by the Defendant raise numerous red flags
and further demonstrate that Plaintiff's Note and Mortgage were not deposited into the
Trust by the closing date, and that the "Assignment" was fabricated in attempt to "paper
over" the fatal securitization defects.

26. The failure to deposit Plaintiff's Note into the Harborview Trust before the closing date is
a violation of the PSA and of New York trust law. Consequently, the Trust, or the trustee
Wells Fargo Bank, N.A., nor its agents and employees cannot claim any legal or
equitable right, title, or interest in McLaughlin's Note and Mortgage since the
Defendants, and the Harborview Trust cannot take any action which is not authorized by
the Securitization agreements that created and govern the Harborview Trust.

27. Plaintiff does not allege or assert that he is a beneficiary or party to the PSA. Rather,
Plaintiff alleges that the failure to securitize his Note makes it impossible for the
Defendants to claim, allege or assert that it was assigned, transferred or granted
Plaintiff's Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff
also alleges that the failure to securitize his Note and Mortgage has resulted in an
unperfected lien that Defendants cannot enforce in any manner whatsoever.[5]

---

[5] These allegations are identical to those brought by the Nevada Attorney General against Bank
of America, BAC home Loans Servicing, and Recontrust, in which Attorney General Catherine
Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by

~ 8 ~

28. McLaughlin relied on the Defendant's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's home will find themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party and (5) he has expended significant funds to cover the cost of attorneys' fees and related costs.

29. At this time, rather than seek compensatory consequential, punitive, and other damages, Plaintiff simply seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor the Defendants, such that either of them can collect Plaintiffs mortgage payments demand payment or engage in debt collection activities. The Plaintiff certainly reserves the right to file an amended complaint to seek all appropriate damages at the appropriate time.

30. Plaintiff Datacomm Investment Company, Inc. is a secured creditor who originally stood in a "second" position behind the original Note an Deed of Trust. If in fact the Defendant and the McLaughlin executed a valid change in the original contract (which is disputed, because McLaughlin has since learned that the Defendant is not a real party in interest to misrepresenting to homeowners that they had authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitzation Trusts. *State of Nevada vs. Bank ofAmerica et al.,* No. 3:11-cv-00135-RCJ, (C.D. Nev August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note." *Id.* at ¶ 146.

~ 9 ~

1   the mortgage note, and thus had no power to execute any change to a contract it lacked

2   privity thereunder)  then such a change operates as a Rescission of a prior contract and

3   execution of a new contract. Under such circumstances, any new contract would be

4   placed in a position inferior to Plaintiff Datacomm absent the execution of a valid

5   subordination agreement, which did not occur.

6

7

8   **III.    THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE**

9   **CHAIN OF TITLE TO PLAINTIFF'S HOME**

10

11   31. Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that

12   administers the MERS System, a national electronic registry that Purports to track the

13   transfer of ownership interests and servicing rights in mortgage loans, including

14   McLaughlin's loan. In 1993, the MERS system was created by several large participants

15   in the real estate mortgage industry to track ownership interests in residential mortgages

16   Mortgage lenders and other entities, known as MERS members, subscribe to the MERS

17   system and pay annual fees for the electronic processing and tracking of ownership and

18   transfers of mortgages. Members contractually agree to appoint MERS as their common

19   agent on all mortgages they register in the MERS system. In essence, MIERS privatized

20   the mortgage recording system, creating a situation wherein a borrower can no longer go

21   to the Office of the County Recorder and determine who their lender actually is at any

22   given point in time.

23   32. MERS is listed as grantee in the official records maintained at county register of deeds

24   offices. The lenders were supposed to retain the interest in the promissory notes, as well

25   as the servicing rights to the mortgages, not MERS.

26   33. Plaintiff alleges that MERS did not affect assignment, transfer, negotiation, or sale of his

27   Note and Mortgage to any Defendant or Doe Defendant.

28

~ 10 ~

34. The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed"). The Trust Deed conveys a security interest and power of sale in the real estate to the Lender, not MERS.[6]

35. Because MERS is merely an electronic registration system and not a true pecuniary beneficiary and did not grant, assign or transfer any true or pecuniary beneficial interest in Plaintiff's Note and Mortgage. Contrary to the recitations contained in the "Assignment" purportedly executed on September 6, 2011: (1) MERS did not receive any value or consideration for Plaintiff's Note and Mortgage, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiffs Note and Mortgage; and (3) Martha Munoz, the purported signatory of the purported "Assignment", was not the "Assistant Secretary" for MERS and lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiff's Note and Mortgage (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiff's Note and Mortgage, which Plaintiff claims it did not).

36. MERS's own membership rules directly prohibit MERS from ever claiming ownership of any mortgages or negotiable instruments, including McLaughlin's. A successor-in-interest to the beneficial interest in the Trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust. In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have a beneficial interest in any mortgage, that it does not loan money, and that it does not suffer a default if a borrower fails to repay a mortgage

---

[6] This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of San Diego: [legal description of property]. Deed of Trust at ¶ R.

~ 11 ~

loan.[7] Therefore, MERS does not own [P1] Note and Mortgage, and did not "grant, assign, or transfer" any interest therein to Bank of America, National Association on September 6, 2011, or at any time before or thereafter.

37. The purported "assignment" of McLaughlin's Note and Mortgage is a fraudulent lien claim and in direct contravention of the laws and customs of California.[8]

38. Therefore, based on the foregoing, MERS did not, *in fact*, assign any interest to Bank of America, National Association, such that it can demand mortgage payments or report McLaughlin's payments as late, nor did the Bank of America have anything to "assign" in April of 2012 when the second bogus "assignment" was executed by yet another "robo signor", Jeff Young.

## IV.   THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO BANK OF AMERICA

39. On September 6, 2011, Bank of America, National Association caused the Assignment to be recorded with the County of Orange. The Assignment alleged that for "value received" MERS granted, assigned, and transferred to Bank of America all beneficial interest in the Deed of Trust, The Assignment was purportedly signed by "Martha Munoz" as the "Vice Presiden" of MERS. Plaintiff alleges that no such transfer ever occurred, and that Martha Munoz is not and was not the "Vice President" of MERS.

---

[7] See Video Deposition of R.K. Arnold, *Henderson v. MERSCORP*, Inc., Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraudcom/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).
[8] "Whatever 'necessary to comply with law or custom' means, and there is no evidence in the record to explain it. it should not mean that U.S. Bank or MERS' can contract away their obligations to comply with foreclosure statutes." In *re Salazar*, 448 B.R. 814, 823 (finding that the MERS system is not an alternative to statutory foreclosure laws, which "must be respected" and affirming that "[t]his court . . .joins the courts in other states that have rejected MERS' offer of an alternative to the public recording system."). Id. at 824.

~ 12 ~

40. Plaintiff alleges that Martha Munoz is an individual who simply signs thousands of property record documents without any legal or corporate authority.[9]

41. In fact, the Assignment was fraudulently executed without MERS's knowledge or authorization.

42. Martha Munoz was never, in any manner whatsoever, appointed as the "Assistant Secretary" by the Board of Directors of MERS, as required by MERS 's corporate by-laws and an adopted corporate resolution by the Board of Directors of MERS. For that reason, Martha Munoz never had, nor has, any corporate or legal authority from MERS, or the lender's successors and assigns, to execute the purported "Assignment."[10] This was an intentional act undertaken by Bank of America, National Association, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

43. The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of Plaintiff's mortgage payments, as well as engaging in other debt collection activities.

44. Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff from Defendants, which amount is currently unknown, but will be determined

---

[9] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country. Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are now known as "robo-signers."
[10] The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, WL 1883829 (ED. Tex. 2011) ("Kingman"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as "Vice President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

~ 13 ~

upon conducting discovery. Plaintiff believes this amount will be in excess of the amount of his obligation.

45. Attempting to "assign" or transfer a Deed of Trust by itself as Defendants did here, does not allow enforcement of Plaintiffs Note and Mortgage. As alleged herein, Plaintiff's Note Was not properly negotiated, endorsed and transferred to Bank of America, National Association or later to Wells Fargo as trustee who seek to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

46. California Commercial Code section 3301 limits a negotiable instrument' enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

47. On information and belief, none of the Defendants were/are present holders in due course of Plaintiff's Note such that they can enforce Plaintiffs obligation and demand mortgage payments

48. On information and belief, Defendants were not, and are not, a nonholder in Possession of Plaintiff's Note who has rights of the holder.

49. If there is a holder in due course of Plaintiff's Note at issue, pursuant to California Commercial Code section 3301, et seq. and/or the PSA, it is the entity that can establish a Pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiffs Note and Mortgage.[11]

---

[11] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide in *In Re Kemp*, Case No. 0S-l8700-JHW (Bankr. D.N.J. November 16, 2010) (for Publication) exposed the Shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due Course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement Ms. DeMartini testified that it was standard Practice for Countrywide to

~ 14 ~

50. On information and belief, none of the Defendants were/are entitled to enforce Plaintiff's Note pursuant to § 3309 or subdivision (d) of § 3418.

51. Plaintiff alleges that, prior to demanding mortgage payments from the Platinfif none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiff's Note and/or Deed of Trust as required under California law - irrespective of who is actually in physical possession of Plaintiff's Note.

52. Plaintiff alleges that, on information and belief, that the Defendants and/or its agents are fraudulently enforcing a debt obligation in which they have no pecuniary equitable or legal interest. Thus, the Defendant's conduct is part of a fraudulent debt collection scheme.

## V.   PLAINTIFF HAS SUFFERED AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES

53. The conduct described above by the Defendants was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage. However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

54. Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, Defendants

---

warehouse the original notes, which were stored in Simi Valley, California despite securitization contracts that required the notes to be physically transferred to Sponsors trustees or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys general's complaints and state and federal investigations reveal that business practices like Countrywide 's were Common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans Ms. Martini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which of the 104 loans that were examined were endorsed by Countrywide: ".. If the lack of endorsement on these notes is typical - and 104 out of 104 suggests it its – the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs Raise More Questions,* Fort., (June 3, 2011), http://finance.fortune.cnn.com/2011/06/03/at-bank-of-america-moreincomplete-mortgage-docs-nad-more-questions/.

~ 15 ~

failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

55. On information and belief, at all times material, the Defendants had and have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate accounts.

56. On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

57. As a direct and proximate result of the actions of the Defendants, set forth above, Plaintiff overpaid in interest.

58. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on his credit report by the Defendants is unable to refinance out of his present loan, buy another property, or sell his home.

59. As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiff's home has been slandered, clouded, and its salability has been rendered unmarketable.

60. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of his Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

61. As a direct and proximate result of the actions of the Defendants set forth above, **multiple** parties can attempt to enforce Plaintiff's debt obligation.

62. The conduct of named Defendants and one or more of the Doe defendants has led to the imminent loss of Plaintiff's home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, the costs associated with removing the cloud from his property title and attorneys' fees, in an amount to be proven at trial.

~ 16 ~

63. The conduct of the Defendants, and one or more of the Doe Defendnts' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would enable them to **illegally and fraudulently** collect on Plaintiff's debt, and which in essence has rendered the title to the property unmarketable.

64. The title to Plaintiff's Property has been rendered unmarketable and unsalable because of the multiple claims being made against Plaintiff's debt and underlying security (the "Subject Property"). If the Assignments of the Deed of trust is not cancelled and set aside, Plaintiff will be incurably prejudiced. Plaintiff will be denied the opportunity to identify and negotiate with his **true creditor** and exercise his right to verify and validate his debt.

65. Plaintiff has offered to and is ready, willing, and able to unconditionally tender his obligation. [12]

## VI.   ANY MODIFICATION OF THE PRIOR LOAN IS SUBORDINATE TO PLAINTIFF DATACOMM INVESTMENTS INTERESTS

---

[12] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not actually tender. *Alicia v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) (". . .debtor must allege a credible tender in the amount of the secured debt. . ."). Moreover, tender is **not** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi c. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal June 24, 2011, at *16 (emphasis added) (citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App 2d 558, 564 (1957). *See also, Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) (". . .requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments it would be **illogical and inequitable** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defedants have any rights under the loan. *See Onofio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

~ 17 ~

66. In June of 2009 the Defendant Bank of America negotiated a "Loan Modification" with the Plaintiff McLaughlin.

67. McLaughlin, based on the failure of Bank of America to have any interest in the loan, maintains that said modification was void *ab initio*, since Bank of America and McLaughlin were not in privity of contract.

68. In the unlikely event the modification was valid, in order for a "Modification" to take place, both parties to the contract must agree to the change, and once executed the act of execution serves to discharge the parties' obligations under the prior contract, and the parties are thereafter obligated under the new obligations.

69. Since a modification serves to DISCHAGE the parties obligations under the original contract, the new, modified, contract is a new obligation.

70. As a new obligation, it would be SUBORDINATE to any pre-existing obligation or lien on the property.

71. Accordingly, if in fact a valid modification was executed, it would now be subordinate to the lien of Datacomm Investments, Inc.

## VII. THE DEFENDANTS ATTEMPTS TO UNDERTAKE A FORECLOSURE ARE INVALID

72. As more fully stated above, the Defendants have no real or demonstrable interest in the Platiniff's property, the mortgage note or he Deed of trust.  Notwithstanding these fatal defects, the Defendant's attempts to comply with the non-judicial foreclosure statutes is incomplete and therefore ineffective.

73. In the first place, a foreclosing party MUST have standing to undertake the non-judicial foreclosure. None of the Defendants have standing to do so.

74. Furthermore, California Civil Code Section 2923.5 requires that an "authorized agent" must undertake the following "due diligence as a condition antecedent to the recording of a Notice of Default:

(1) A mortgagee, beneficiary, or authorized agent shall first

~ 18 ~

attempt to contact a borrower by sending a first-class letter that
includes the toll-free telephone number made available by HUD to find
a HUD-certified housing counseling agency.

    (2) (A) After the letter has been sent, the mortgagee,
beneficiary, or authorized agent shall attempt to contact the
borrower by telephone at least three times at different hours and on
different days. Telephone calls shall be made to the primary
telephone number on file.

    (B) A mortgagee, beneficiary, or authorized agent may attempt to
contact a borrower using an automated system to dial borrowers,
provided that, if the telephone call is answered, the call is
connected to a live representative of the mortgagee, beneficiary, or
authorized agent.

    (C) A mortgagee, beneficiary, or authorized agent satisfies the
telephone contact requirements of this paragraph if it determines,
after attempting contact pursuant to this paragraph, that the
borrower's primary telephone number and secondary telephone number or
numbers on file, if any, have been disconnected.

    (3) If the borrower does not respond within two weeks after the
telephone call requirements of paragraph (2) have been satisfied, the
mortgagee, beneficiary, or authorized agent shall then send a
certified letter, with return receipt requested.

    (4) The mortgagee, beneficiary, or authorized agent shall provide
a means for the borrower to contact it in a timely manner, including
a toll-free telephone number that will provide access to a live
representative during business hours.

75. The Defendants claim a "California Declaration" purportedly signed by a "0.005029" on

September 27, 2011 constitutes valid compliance with the statutory requirements.

76. The Defendant denies that "0.005029" is a real person, and therefore the "Declaration" as

filed is a legal nullity, and cannot be used to record a valid "Notice of Default".

77. In addition, the Plaintiff McLaughlin denies that the Defendant undertook the acts

required under Section 2923.5(g)(1) in that no written or telephonic contact was made or

attempted as required.

78. Since the Defendant has failed to properly file and record a valid Notice of Default, the

Defendant is legally precluded from conducting a trustee's sale even IF it was a valid

trustee.

~ 19 ~

## VIII. THE PLAINTIFFS HAVE MET THE BURDEN REQUIRED TO OBTAIN A PRELIMINARY SHOWING THAT THE PLAINTIFF HAS A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS, AN THEREFORE THE PRELIMINARY INJUNCTION SHOULD ISSUE

79. As indicated in the introduction, the Defendants have falsely attempted to characterize the pending cause of action as a foreclosure defense. It is not. The cause of action simply seeks the assistance of the court to determine a very real and demonstrable controversy as between the parties that, based on the facts asserted by the Plaintiff, indicate a strong likelihood of success. The Plaintiffs only seek the status quo be maintained while the case is litigated. As is well known, a cause of action for Declaratory Relief is entitled to priority, and as long as the Defendants are cooperative during the discovery process, the case should be ready for trial in an expedited manner.

80. The Defendant has caused to be filed with this court documents that are clearly forged an invalid, and asked the court to take judicial notice of same. The Defendants' entire defense is predicated upon the court accepting the fraudulent assignments it caused to be filed with the court.

81. Even if the Defendants can show they are the legitimate note holders, the fact remains that they have failed to comply with California's statutory non-judicial foreclosure statutes, an the interests of Plaintiff Datacomm Investment are clearly superior to that of the Defendants. These are issues that must be resolved before disposition of the secured asset.

82. The stripping of a property right from one person to another, ignoring the security interest of a superior lien claimant, and allowing that person the free exercise of dominion and control of the property, with the ability to dispose of the property to a "bona fide" purchaser for value will cause irreparable harm to the Plaintiffs. All property is unique, and the loss of a unique property creates irreparable harm.

83. Based on the above, the Plaintiff's respectfully request that a Preliminary Injunction issue preventing the Defendants from undertaking the planned "trustee's sale" since to do so

~ 20 ~

would cause irreparable harm to both Plaintiff McLaughlin as well as Plaintiff Datacomm Investment, Inc.

For the reasons stated above, the Plaintiff's respectfully request that a preliminary injunction issue as requested.

DATED: May 25, 2012

_____

Joseph La Costa, Attorney for Plaintiffs

~ 21 ~

# EXHIBIT 10

1  BLANK ROME LLP
   Todd A. Boock (SBN 181933)
2  TBoock@BlankRome.com
   Angela Y. Shin (SBN 241132)
3  AShin@BlankRome.com
   1925 Century Park East, 19th Floor
4  Los Angeles, CA 90067
   Telephone:   424.239.3400
5  Facsimile:   424.239.3434

6  Attorneys for WELLS FARGO BANK, N.A., as Trustee on behalf of holders of the HarborView
   Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates Series 2006-12, BANK OF
7  AMERICA, N.A., and RECONTRUST COMPANY, N.A.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/15/2012** at 03:48:00 PM
Clerk of the Superior Court
By Margaret M Demaria,Deputy Clerk

8

9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10                        **COUNTY OF ORANGE**

11

12  BRIAN McLAUGHLIN; DATACOM              Case No. 30-2012-00561729-CU-CO-CJC
    INVESTMENT COMPANY, INC.,
13                                         [Assigned to Hon. Thierry Patrick Colaw,
                          Plaintiff,       Dept. C25]
14
        vs.                               **OPPOSITION TO THE ORDER TO**
15                                         **SHOW CAUSE WHY PRELIMINARY**
                                           **INJUNCTION SHOULD NOT ISSUE**
16  WELLS FARGO BANK, NATIONAL
    ASSOCIATION; BANK OF AMERICA,          [Request For Judicial Notice and Declaration
17  NATIONAL ASSOCIATION; RECONTRUST       of Diana Delong Filed Concurrently
    COMPANY, NATIONAL ASSOCIATION; AND     Herewith]
18  DOES 1 THROUGH 10, INCLUSIVE,
                                           Date:   June 29, 2012
19                        Defendants.      Time:   10:00 a.m.
                                           Dept:   C25
20

21

22        Defendants Wells Fargo Bank, N.A., as Trustee for HarborView Mortgage Loan Trust,

23  Mortgage Loan Pass-Through Certificates Series 2006-12 ("WFB"), Bank of America, N.A.

24  ("BANA") and Recontrust Company, N.A. ("Recontrust") (collectively, "Defendants") hereby

25  submit their Opposition to the Order to Show Cause Re Preliminary Injunction ("Opposition") as

26  follows:

27

28

# TABLE OF CONTENTS

Pages

I.   INTRODUCTION ..............................................................................................1

II.  STATEMENT OF FACTS ................................................................................1

III. LEGAL ARGUMENTS.....................................................................................2

    A.   No Injunction May Issue Because Plaintiff Has Not Established a Likelihood
         of Prevailing on His Claims.........................................................................2

    B.   WFB is Not Legally Required to Prove it is the Noteholder For Defendants to
         Initiate a Non-Judicial Foreclosure Under a Deed of Trust...........................3

    C.   There is No Dispute that WFB is the Current Senior Lienholder of the
         Property.....................................................................................................6

    D.   MERS as the Original Beneficiary, Properly Assigned the Deed of Trust...................8

         1.   Background of MERS ......................................................................8

         2.   Plaintiff Contractually Agreed that MERS Can Assign the Deed of
              Trust ...........................................................................................8

    E.   Defendants Complied with the Statutory Requirements To Foreclose........................10

    F.   Plaintiff's Failure to Tender the Amount Due on the Loan Precludes
         Injunctive Relief.......................................................................................11

    G.   The Junior Lienholder Accepts Risks That a Senior Lien Will be Modified
         And Therefore, the Modification Did Not Change Lien Priority ...................12

IV.  If an Injunction is Granted, Plaintiff Must Post a Bond .........................................13

V.   CONCLUSION................................................................................................14

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

**CASES**

3

4
*ABBA Rubber Co. v. Seaquis*
   (1991) 235 Cal.App.3d. 1 .....................................................................14

5
*Abubo v. Bank of NY Mellon*
6    (D. Hawaii 2011) 2011 U.S. Dist. Lexis 138408.......................................7

7
*Arnolds Management Corp. v. Eischen*
   (1984) 158 Cal. App. 3d 575 ............................................................11, 12
8

*Bascos v. Federal Home Loan Mortg. Corp.*
9    (C.D. Cal., 2011) 2011 U.S. Dist. LEXIS 86248 ........................................7

10
*Bezverkhov v. Cal-Western Reconveyance Corp.,*
11    (E.D. Cal. Dec. 11, 2009, No. 09-01880) 2009 WL 4895581 .....................9

12
*Candelo v. NDex West, LLC*
   (E.D. Cal. 2008) ........................................................................................5
13

*Churchill Village, L.L.C. v. General Elec. Co.,*
14    169 F.Supp.2d. 1119 (N.D. Cal. 2000) ...............................................3, 6

15
*Dancy v. Aurora Loan Servs.,*
16    LLC (N.D. Cal. Nov. 2, 2010) No. C............................................................9

17
*Derakhshan v. Mortg. Elec. Registration Sys.,*
   (C.D. Cal. June 29, 2009) No. SACV09-1185 AG, 2009 U.S. Dist. LEXIS *1 .....................9
18

*Fontenot v. Wells Fargo Bank, N.A.(2011)*
19    198 Cal.App.4th 256 ...............................................................................8

20
*Friery v. Sutter Buttes Sav. Bank*
21    (1998) 61 Cal.App. 4th 869 ...........................................................12, 13

22
*Gamboa v. Trustee Corps*
   (N.D. Cal. 2009) 2009 WL 656285 ...........................................................5
23

*Gomes v. Countrywide Home Loans, Inc.*
24    (2011) 192 Cal.App.4th 1149 ...............................................................4, 5, 9

25
*Grey v. Webb*
   (1979) 97 Cal.App. 3d. 232 ...................................................................3, 6
26

27
*Herrera v. Federal Nat. Mortg. Assn.*
   (2012) 205 Cal.App.4th 1495 ....................................................................8

28

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

*Humboldt Sav. Bank v. McCleverty*
    (1911) 161 Cal. 285 ..................................................................................................11

*Hunt v. Superior Court*
    (1999) 21 Cal.4th 984 ..............................................................................................3

*I.E. Assocs. v. Safeco Title Ins. Co.*
    (1985) 39 Cal. 3d 281 ..............................................................................................4

*Kachlon v. Markovitz,*
    (2008) 168 Cal.App.4th 316 ..................................................................................10

*Karlsen v. American Sav. & Loan Assn.*
    (1971) 15 Cal.App.3d 112 ......................................................................................12

*Lane v. Vitek Real Estate Industries Group*
    (E.D. Cal. 2010) ...................................................................................................4, 9

*Manlangit v. Nat'l City Mortg.*
    (E.D. Cal. May 20, 2010, No. 10-1225 WBS DAD) .............................................10

*Moeller v. Lien*
    (1994) 25 Cal. App. 4th 822 ..............................................................................3, 4

*Neal v. Juarez*
    (S.D. Cal. 2007) 2007 WL 2140640 .......................................................................6

*Poseidon Dev. Inc. v. Woodland Lane Estates,*
    LLC (2007) 152 Cal. App. 4th – 118 .......................................................................7

*Putkkuri v. ReconTrust Co.*
    (S.D. Cal. 2009) 2009 WL 32567 ...........................................................................5

*Residential Capital v. Cal-Western Reconveyance Corp.*
    (2003) 108 Cal.App.4th 807 ...................................................................................4

*Right Site Coalition v. Los Angeles Unified School Dist.*
    (2008) 160 Cal.App.4th 336 ...................................................................................3

*Sami v. Wells Fargo Bank*
    (N.D. Cal., 2012) 2012 U.S. Dist. LEXIS 38466 ...................................................7

*San Diego Home Solutions, Inc. v. ReconTrust Co.*
    (S.D. Cal. 2008) 2008 WL 5209972 .......................................................................6

*Sicairos v. NDEX West LLC,*
    (S.D. Cal. 2009) 08cv2014-LAB(BLM) 2009 WL 385855......................................3

*Tina v. Countrywide Home Loans, Inc.*
    (S.D. Cal. 2008) 2008 WL 4790906 .......................................................................6

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

*United States Cold Storage v. Great Western Savings and Loan Assn.*
   (1985) 165 Cal. App. 3d 1214 ...................................................................11

*White v. Davis*
   (2003) 30 Cal.4th 528 .................................................................................2

*Wurtzberger v. Resmae Mortg. Corp.*
   (E.D. Cal. Apr. 29, 2010) ............................................................................9

STATUTES

California Civil Code § 2924(a) .......................................................................5

California Civil Code § 2923.5, and (4) ......................................................1, 2

California Civil Code § 2924, *et seq.* .........................................................3, 4

California Civil Code § 2934a ..........................................................................9

Civil Code § 2923.5 ...............................................................................10, 11

Civil Code § 2923.5(g) ..................................................................................10

Civil Code. § 2934a(a)(1)(A).........................................................................10

Code of Civil Procedure Section 529(a) .........................................................14

OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Plaintiff's Complaint and the Order to Show Cause Regarding Preliminary Injunction is nothing more than a frivolous attempt to join the trend of consumers bringing meritless actions against lenders to delay proper non-judicial foreclosures.  In his supplemental brief, Plaintiff throws in the proverbial kitchen sink based entirely on hyperbole, red herrings, conspiracies, and conclusory allegations that are completely unsupported by any factual allegations or law.  In fact, Plaintiff's entire brief is premised upon inapplicable out-of-state law and the penal code for which neither provides a basis for relief in this case.  Notably, one glaring and obvious red herring is Plaintiff's attempt to demonize the securitization of loans.  There is nothing wrong or illegal in securitizing loans and, in any event, Plaintiff lacks standing to challenge its validity.

In the same vein, Plaintiff has completely failed to meet his burden of establishing a likelihood of prevailing on his claims for a preliminary injunction to issue.  Specifically, (1) there is no dispute that WFB is the current lienholder of the Property pursuant to the recorded Assignment of the Deed of Trust; (2) WFB is not required to provide any evidence that it is holder of the note in order to legally foreclose; (3) Defendants have absolutely complied with the Declaration of Compliance pursuant to California Civil Code § 2923.5, and (4) WFB's loan modification did not change its superior lien position.

In light of the above, it is abundantly clear that Plaintiff has no legal grounds whatsoever for the preliminary injunction or his lawsuit.  It is also clear that Plaintiff is abusing the legal system as a last minute desperate attempt to save the Property from the inevitable foreclosure.  For these reasons, Plaintiff's request for preliminary injunction must be denied.

**II.   STATEMENT OF FACTS**

In or around September 2006, Plaintiff Brian McLaughlin ("Plaintiff") signed a promissory note ("Note") for $1,000,000 in exchange for a loan from Countrywide Bank, N.A. ("Countrywide") for the purchase of the real property located at 753 Barracuda Way, Laguna Beach, CA  92651 (the "Property").  In connection with the Note, McLaughlin executed a Deed of Trust which was secured by the Property ("Deed of Trust").  Request For Judicial Notice ("RJN"), Exh. 1. Pursuant to the

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1  Deed of Trust, Recontrust was designated as Trustee and Mortgage Electronic Registration Systems,

2  Inc. ("MERS") was designated as the Deed of Trust's beneficiary. *Id.*

3      On or about February 2009, Plaintiff was approved for a loan modification.  Plaintiff

4  executed a Loan Modification Agreement which adjusted the interest rate and monthly payment plan

5  for a period of five years.  Declaration of Diana Delong ("Delong Decl."), ¶ 4, Exh. "A."

6      On or about September 6, 2011, MERS, as the beneficiary of the Deed of Trust, assigned the

7  Deed of Trust from Countrywide to BANA, successor by merger to BAC Home Loans Servicing LP

8  fka Countrywide Home Loans Servicing LP.  RJN, Exh. 2.

9      In or around late 2010, Plaintiff defaulted on the Note.  Consequently, BAC Home Loans

10  Servicing, LP, the then-loan servicer of the Note, sent Plaintiff two Notice of Intent to Accelerate

11  letters.  Delong Decl., ¶ 5.   Plaintiff did not cure the default and, as a result, Recontrust, acting as

12  an agent for BANA, recorded a Notice of Default on October 6, 2011.  RJN, Exh. 3.

13      On or about April 4, 2012, BANA assigned the Deed of Trust to WFB.  The Assignment of

14  Deed of Trust was recorded on April 12, 2012.  RJN, Exh. 4.  BANA remained a servicer of the loan

15  for WFB.

16      On or about April 27, 2012, Recontrust recorded a Notice of Trustee's Sale for a foreclosure

17  sale of May 21, 2012, which has been postponed to July 6, 2012, due to the issuance of the

18  temporary restraining order by this Court.

19  **III.    LEGAL ARGUMENTS**

20      **A.    No Injunction May Issue Because Plaintiff Has Not Established a Likelihood of**

21          **Prevailing on His Claims**

22      A party seeking a preliminary injunction bears the burden of demonstrating that "the relative

23  balance of harms that is likely to result from the granting or denial of interim injunctive relief weighs

24  in her favor **and** that she is likely to prevail on the merits." *White v. Davis* (2003) 30 Cal.4th 528,

25  554 (emphasis added).  Stated another way, "[i]n exercising its discretion whether to issue a

26  preliminary injunction 'the trial court must consider "two interrelated factors," specifically, the

27  likelihood that plaintiffs will prevail on the merits at trial, and the comparative harm to be suffered

28  by plaintiffs if the injunction does not issue against the harm to be suffered by defendants … if it

1   does.'" *Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 341-
2   342 (quoting *King v. Meese* (1987) 43 Cal.3d. 1217, 1226).

3       "A trial court may not grant a preliminary injunction, regardless of the balance of interim
4   harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the
5   claim." *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 (quoting *Butt v. State of California*
6   (1992) 4 Cal.4th 668, 678).

7       Plaintiff bears the burden here, and it is not one that is lightly borne: "A preliminary
8   injunction is an extraordinary and drastic remedy, one that should not be granted **unless the movant,**
9   **by a clear showing, carries the burden of persuasion."** *Churchill Village, L.L.C. v. General Elec.*
10  *Co.,* 169 F.Supp.2d. 1119, 1125 (N.D. Cal. 2000) (emphasis added). "[I]njunction is a delicate
11  power, requiring great caution and sound discretion, and rarely, if ever, should [it] be exercised in a
12  doubtful case ...." *Grey v. Webb* (1979) 97 Cal.App. 3d. 232, 236.

13      Plaintiff's brief contains nothing more than frivolous and conclusory allegations that are
14  completely unsupported by any facts or law. For the reasons set forth below, Plaintiff has not met
15  his burden because he has <u>no possibility</u> of ultimately prevailing on the merits of his claims.

16  **B.      WFB is Not Legally Required to Prove it is the Noteholder For Defendants to**
17  **Initiate a Non-Judicial Foreclosure Under a Deed of Trust**

18      Plaintiff argues that WFB must prove that it is the holder of the Note in order to foreclose,
19  and that Defendants are merely "third party strangers" to his mortgage. Plaintiff's Supplemental
20  Brief ("Plaintiff's Suppl. Brief"), ¶ 1. This argument is baseless. The "holder in due course" theory
21  stems from the Commercial Code which *does not* govern the non-judicial foreclosure process under
22  deeds of trust.  The Commercial Code is simply the "wrong law" when it comes to nonjudicial
23  foreclosure in California. *Sicairos v. NDEX West LLC,* (S.D. Cal. 2009) 08cv2014-LAB(BLM)
24  2009 WL 385855, at *2.

25      The rules that *do* govern non-judicial foreclosure by power of sale in a deed of trust are set
26  forth in the California Civil Code § 2924, *et seq*.  These Civil Code provisions establish a
27  comprehensive and exclusive set of regulations for the conduct of non-judicial foreclosures. *Moeller*
28  *v. Lien* (1994) 25 Cal. App. 4th 822, 834 ("The comprehensive statutory framework established to

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1  govern nonjudicial foreclosure sales is intended to be exhaustive"); *I.E. Assocs. v. Safeco Title Ins.*

2  *Co.* (1985) 39 Cal.3d 281, 285 (The statutory provisions regulating the nonjudicial foreclosure of

3  deeds of trust are contained in [Civil Code] sections 2924-2924i. These provisions cover every

4  aspect of exercise of the power of sale contained in a deed of trust").

5      "Because of the exhaustive nature of this scheme, California appellate courts have refused to

6  read any additional requirements into the non-judicial foreclosure statute." *Lane v. Vitek Real Estate*

7  *Industries Group* (E.D. Cal. 2010) 713 F.Supp.2d 1092, 1098; *Moeller, supra,* 25 Cal.App.4th at 834

8  ("It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating

9  nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial

10  foreclosure proceedings").

11      "[T]he Supreme Court has said that the legislature intended to cover the entire subject area of

12  non-judicial foreclosure by statute and leave *nothing* for the court." *Residential Capital v. Cal-*

13  *Western Reconveyance Corp.* (2003) 108 Cal.App.4th 807, 825 (emphasis added). As made clear by

14  the foregoing authority, the non-judicial foreclosure procedure California follows is governed

15  exclusively by Civil Code § 2924, *et seq.* This statutory framework provides no procedure for

16  determining who is the "holder in due course of the note." Civil Code § 2924, *et seq.* **This is**

17  **because proving that one is the holder of the note is not a requirement to initiate a non-judicial**

18  **foreclosure under a deed of trust.**

19      The Court of Appeal recently addressed this argument in *Gomes v. Countrywide Home*

20  *Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1152. In *Gomes,* plaintiff alleged that he did not know the

21  identity of the note's beneficial owner because he believed that his originating lender sold it on the

22  secondary mortgage market. On information and belief, plaintiff then alleged that the person or

23  entity that initiated the foreclosure process was not the note's rightful owner, nor acting with the

24  rightful owner's authority. *Id.* at 1152. The court rejected this argument. By asserting a right to

25  bring a court action to determine whether the owner of the Note has authorized its nominee to

26  initiate the foreclosure process, plaintiff was attempting to interject the courts into this

27  comprehensive nonjudicial scheme. As Defendants correctly point out, plaintiff had identified no

28  legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial

1   foreclosure process suggests that such a judicial proceeding is permitted or contemplated. *Id.* at

2   1154.

3       Indeed, the Court of Appeal made clear that a party's effort to circumvent California's

4   established non-judicial foreclosure process shall not be tolerated. The Court added: "nowhere does

5   the statute provide for a judicial action to determine whether the person initiating the foreclosure

6   process is indeed authorized and we see no ground for implying such an action." *Id.* (citing *Lu v.*

7   *Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596).

8       The instant case is no different than *Gomes*. Providing Plaintiff with a preliminary injunction

9   here would contravene the established policy of the non-judicial foreclosure framework. As stated

10  in *Gomes*, it "would fundamentally undermine the nonjudicial nature of the process and introduce

11  the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Id.* at 1155.

12      **Plaintiff admits that he owes money on his mortgage obligation** but merely disputes the

13  "validity" of the loan on the basis that WFB may not be the proper noteholder. Plaintiff's Suppl.

14  Brief, ¶ 6. Simply put, there is no requirement that WFB is required to provide **any** proof that it is

15  the noteholder and, in fact, is completely contrary to law as no such requirement exists for

16  Defendants to legally foreclose.

17      Furthermore, Plaintiff argues that Defendants have failed to provide any evidence to verify

18  the owner and the amount of Plaintiff's mortgage, or validate the claim to Plaintiff's debt obligation.

19  Plaintiff's Suppl. Brief, ¶ 19. Plaintiff implicitly alleges that Defendants must possess the note to

20  proceed with foreclosure. This allegation is similarly unsupported by the non-judicial foreclosure

21  laws.

22      Possession of the original note is not a prerequisite to foreclosure. *Gamboa v. Trustee Corps*

23  (N.D. Cal. 2009) 2009 WL 656285, at *4 ("the statutory framework governing non-judicial

24  foreclosures contains no requirement that the lender produce the original note to initiate the

25  foreclosure process."; *Putkkuri v. ReconTrust Co.* (S.D. Cal. 2009) 2009 WL 32567, at *2

26  ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the

27  right to initiate the foreclosure process. Cal. Civ. Code § 2924(a). Production of the original note is

28  not required to proceed with a non-judicial foreclosure."); *Candelo v. NDex West, LLC* (E.D. Cal.

OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

1   2008) 2008 WL 5382259, at *4 ("No requirement exists under the statutory framework to produce

2   the original note to initiate non-judicial foreclosure."); *San Diego Home Solutions, Inc. v.*

3   *ReconTrust Co.* (S.D. Cal. 2008) 2008 WL 5209972, at *2; *Tina v. Countrywide Home Loans, Inc.*

4   (S.D. Cal. 2008) 2008 WL 4790906, at *8; *Neal v. Juarez* (S.D. Cal. 2007) 2007 WL 2140640, at *8

5   (an "allegation that the trustee did not have the original note or had not received it is insufficient to

6   render the foreclosure proceeding invalid.").

7        In sum, no statute empowers the borrowers to seek judicial review as to whether the entity

8   that initiated the non-judicial foreclosure proceedings was authorized to do so, or to insist upon

9   production of the original Note. Given that a "preliminary injunction is an extraordinary and drastic

10  remedy, one that should not be granted **unless the movant, by a clear showing, carries the burden**

11  **of persuasion,**" Plaintiff's request for a preliminary injunction should be denied. *Churchill Village,*

12  *L.L.C. v. General Elec. Co.,* (N.D. Cal. 2000) 169 F. Supp. 2d. 1119, 1125 (emphasis added).[1]

13       Undoubtedly, WFB is the current senior lienholder as evidenced by the recorded instruments

14  in the chain of title and Defendants are not required to possess the original note to foreclose under

15  the subject deed of trust. Accordingly, Plaintiff has utterly failed to challenge Defendants' authority

16  to initiate foreclosure proceedings.

17       C.    <u>There is No Dispute that WFB is the Current Senior Lienholder of the Property</u>

18       Plaintiff boldly claims that the instruments recorded in the County Recorder's Office are

19  "fabricated" and "fraudulent" and that Defendants violated the "Prospectus and the Pooling and

20  Servicing Agreement" ("PSA") by failing to properly endorse, transfer, accept, and deposit with the

21  Securitization Trust on or before the "closing date" indicated on the "Prospectus." Plaintiff's Suppl.

22  Brief, ¶ 20. Again, Plaintiff points to no facts or applicable law that supports these baseless

23  allegations nor has Plaintiff established that he even has standing to challenge its validity.

24       In addition, without providing any further details, Plaintiff contends that the April 4, 2012

25  "assignment" was executed after the closing date of the Harborview Trust in the year 2006 and that

26  the trust was somehow forbidden by law from accepting any assignment after it closed in the year

27

28  [1] "[I]njunction is a delicate power, requiring great caution and sound discretion, and rarely, if ever, should [it] be exercised in a doubtful case ...." *Grey v. Webb* (1979) 97 Cal. App. 3d. 232, 236.
    136045.30868/95078525v.1                           6

1    2006. Id. at 24.  Notably, Plaintiff does not provide a copy of this purported PSA, does not provide

2    any evidence that the PSA even applies to the instant case, and fails to allege any facts that a

3    violation of the "PSA" or "New York trust law" has even occurred.

4          In any event, none of Plaintiff's allegations have any merit.  Regardless of whether the terms

5    of a PSA's terms were violated, courts have found that similarly situated plaintiffs simply have no

6    standing to have an assignment of a mortgage invalidated on that basis.  This is because such

7    plaintiffs are generally not parties or third-party beneficiaries to the PSA at issue.  *Sami v. Wells*

8    *Fargo Bank* (N.D. Cal., 2012) 2012 U.S. Dist. LEXIS 38466, at *15-16  (finding that plaintiff lacked

9    standing to challenge the mortgage assignment on the basis that the terms of the PSA were not

10   complied with, as she was not a party or third-party beneficiary to the PSA); *Bascos v. Federal*

11   *Home Loan Mortg. Corp.* (C.D. Cal., 2011) 2011 U.S. Dist. LEXIS 86248, at *6 (finding that

12   plaintiff lacked standing to challenge the securitization of the loan).

13         Further, non-compliance with the terms of the PSA, does not affect the validity of the

14   assignment.  *Abubo v. Bank of NY Mellon* (D. Hawaii 2011) 2011 U.S. Dist. Lexis 138408, *21-22

15   ("assuming the terms of the PSA were not followed, Plaintiffs may not set aside the assignment of

16   the Mortgage from Countrywide to BONYM" because the securitized trust was "closed" at the time

17   of the assignment); *Long*, 2011 U.S. Dist. LEXIS 94675, at *4 ("it is irrelevant to the validity of the

18   assignment whether or not it complied with the PSA").  Therefore, regardless of whether the

19   mortgage was transferred after the securitized trust was closed, Plaintiff cannot challenge the

20   Assignment.

21         In addition, California law clearly provides that executing and recording an assignment of

22   deed of trust is sufficient to assign the note, when the assignment provides it is also assigning the

23   deed of trust (which the assignment in this matter states).  Specifically, in *Poseidon Dev. Inc. v.*

24   *Woodland Lane Estates*, LLC (2007) 152 Cal. App. 4th, 1106, 117 – 118, the trial court properly took

25   judicial notice of the legal effect of the assignment—that the lender transferred its beneficial interest,

26   in both the Deed of Trust and the Note, to Wells Fargo by stating in the assignment that lender

27   assigned its interest in the Deed of Trust "[t]ogether with the Promissory Note secured by said Deed

28   of Trust" to Wells Fargo.

OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

1    Similarly, here, the Assignment of the Deed of Trust from Countrywide to BANA and the

2    Assignment of the Deed of Trust from BANA to WFB clearly show that all beneficial interest in the

3    Deed of Trust "together with the Note or Notes therein described" is also assigned to WFB. RJN,

4    Exhs. "2" and "4." In fact, the assignment from Countrywide and BANA was a result of a merger

5    between the two banking entities in 2007. Accordingly, the Exhibits attached to the RJN establish

6    that both the Note and Deed of Trust were assigned to Defendants who have a right to foreclosure

7    under the power of sale contained within the Deed of Trust.

8    **D.    MERS as the Original Beneficiary, Properly Assigned the Deed of Trust**

9        **1.    Background of MERS**

10    Plaintiff spends a great deal of time discussing the effects of MERS' Assignment of the Deed

11    of Trust. Thus, a brief description of MERS may assist the Court in understanding Plaintiff's

12    assertion.

13    The "MERS System" is "a method devised by the mortgage banking industry to facilitate the

14    securitization of real property debt instruments. *Herrera v. Federal Nat. Mortg. Assn.* (2012) 205

15    Cal.App.4th 1495, 1503. MERS is a private corporation that administers a national registry of real

16    estate debt interest transactions. Members of the MERS System assign limited interests in the real

17    property to MERS, which is listed as a grantee in the official records of local governments, but the

18    members retain the promissory notes and mortgage servicing rights. The notes may thereafter be

19    transferred among members without requiring recordation in the public records. *Fontenot v. Wells*

20    *Fargo Bank, N.A.*(2011) 198 Cal.App.4th 256, 267. Under this system, the owner of a promissory

21    note secured by a deed of trust, which oftentimes is the lender, "is designated as the beneficiary of

22    the deed of trust. *Herrera, supra*, 205 Cal.App.4th at 1496.

23        **2.    Plaintiff Contractually Agreed that MERS Can Assign the Deed of Trust**

24    Plaintiff alleges that MERS did not affect assignment, transfer, negotiation, or sale of

25    the Note and Deed of Trust  because it is not a pecuniary beneficiary.  Plaintiff's Suppl. Brief, ¶¶ 33,

26    35. However, MERS claims no ownership interest in either the Note or the Deed of Trust.  Rather,

27    MERS acts merely as a nominal beneficiary for the lender and any successors and assigns based on

28    the clear terms of the Deed of Trust **which Plaintiff signed**. Specifically Paragraph "E" of the Deed

1   of Trust clearly, expressly, and unequivocally authorized MERS to act as the beneficiary in the Deed

2   of Trust as nominee of the lender and **its successors.** The Deed of Trust expressly states that the

3   "beneficiary of this Security Instrument is MERS." RJN, Exh. "1."

4          In addition, Plaintiff **contractually agreed** to allow MERS to assign the Deed of Trust. Page

5   three of the Deed of Trust specifically provides that "[t]he beneficiary of this Security Instrument is

6   MERS (solely as nominee for **Lender and Lender's successors and assigns**) and the **successors**

7   **and assigns of MERS**…For this purpose, Borrower irrevocably grants and conveys to Trustee, in

8   trust, with **power of sale**…."

9          Thus, there is no basis in the law to assert that the designation of MERS as beneficiary

10  renders either the Note or Deed of Trust void. *Dancy v. Aurora Loan Servs.*, LLC, (N.D. Cal. Nov.

11  2, 2010) No. C 10-2602 SBA, 2010 U.S. Dist. LEXIS 116513, at *9-10 (rejecting the contention

12  that MERS could not act as beneficiary under the deed of trust); *Derakhshan v. Mortg. Elec.*

13  *Registration Sys.*, (C.D. Cal. June 29, 2009) No. SACV09-1185 AG, 2009 U.S. Dist. LEXIS *1, *18.

14  ("Plaintiff explicitly authorized MERS to act as beneficiary with the right to foreclose on the

15  property"). Because Plaintiff has expressly granted certain powers to MERS in the Deed of Trust, he

16  cannot subsequently bring a claim based upon the contention that MERS lacked these powers.

17  *Gomes, supra,* 193 Cal. App. 4th at 1157.

18          Moreover, courts have considered and repeatedly rejected the claim that MERS cannot

19  substitute a trustee. *Wurtzberger v. Resmae Mortg. Corp.* (E.D. Cal. Apr. 29, 2010) No. 2:09-cv-

20  0178-GEB-DAD, 2010 U.S. Dist. LEXIS 51751 *1, *7-9 ("California Civil Code Section 2934a

21  authorizes the beneficiary to substitute the trustee. [Thus,] . . . MERS had the authority, as

22  beneficiary, to make the substitution."); *Lane v. Vitek Real Estate Indus. Group* (E.D. Cal. 2010)

23  713 F. Supp. 2d 1092, 1099 (collecting cases for the proposition "that MERS has standing to

24  foreclose as the nominee for the lender and the beneficiary of the Deed of Trust and may assign its

25  beneficial interest to another party").

26          Also, the power of sale which Plaintiff granted to MERS when authorizing MERS to serve as

27  nominee for the lender, including its successors and assigns, "is not disrupted by securitization of the

28  note." *Bezverkhov v. Cal-Western Reconveyance Corp.*, (E.D. Cal. Dec. 11, 2009, No. 09-01880)

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1  2009 WL 4895581, *1, *5.  Other courts have summarily rejected the argument that companies like

2  MERS lose their power of sale pursuant to the deed of trust when the original promissory note is

3  assigned to a trust pool.  *See, e.g., Manlangit v. Nat'l City Mortg.*, (E.D. Cal. May 20, 2010, No. 10-

4  1225 WBS DAD) 2010 WL 2044687, *1, *3.

5          In signing the Deed of Trust, Plaintiff acknowledged that MERS is the beneficiary and has

6  the right to foreclose upon and sell the Property.  As such, MERS is authorized to effectuate a

7  substitution of trustee, assign its beneficial interest, and initiate foreclosure.  *Kachlon v. Markovitz*,

8  (2008) 168 Cal.App.4th 316, 334 ("The beneficiary may make a substitution of trustee . . . to

9  conduct the foreclosure and sale").  As beneficiary of the Deed of Trust, and as nominee of the

10 lender, MERS validly substituted as trustee in accordance with California law.  A trustee is

11 substituted "by the recording in the county in which the property is located of a substitution executed

12 and acknowledged by," as relevant here, the beneficiary of the deed of trust.  Civil Code §

13 2934a(a)(1)(A).

14          This is what happened here.  In sum, the Deed of Trust (signed by Plaintiff) expressly

15 authorizes MERS to assign the Deed of Trust as the nominal beneficiary of the Deed of Trust.

16 Therefore, MERS' assignment were effective such that Defendants have the legal right to foreclose

17 on the Property and Plaintiff has utterly failed to prove otherwise.

18          **E.**    **Defendants Complied with the Statutory Requirements To Foreclose**

19          Plaintiff contends that Defendants failed to comply with Civil Code § 2923.5 because

20 Defendants did not make or attempt to make any contact with him either by written or telephone

21 contact.  Plaintiff's Suppl. Brief, ¶ 77.  This is a blatant lie.

22          The Declaration of Compliance accompanying the Notice of Default reflects that the

23 mortgage specialist tried with due diligence to contact Plaintiff in accordance with California Civil

24 Code § 2923.5.  RJN, Exh. "3."  Civil Code § 2923.5 provides that an agent may not file a notice of

25 default until 30 days after initial contact is made or 30 days after satisfying the due diligence

26 requirement.  Civil Code § 2923.5(g) provides a three-step process to fulfill the "due diligence"

27 requirement: (1) an agent must first attempt to contact a borrower by sending a first-class letter that

28 includes the toll-free number made available by HUD to find a HUD-certified housing counseling

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1   agency, (2) after the letter is sent, an agent must attempt to contact the borrower by telephone at least

2   three times on different days, (3) if the borrower does not respond within two weeks after the

3   telephone call requirements, then a certified letter must be sent with a return receipt requested.

4        Defendants satisfied all the due diligence requirements prior to recording the Notice of

5   Default. Plaintiff received at two Notice of Intent to Accelerate letter by certified mail on October

6   18, 2010 and November 17, 2010 as evidenced by the signed return receipt. Delong Decl., ¶ 5,

7   Exhs. "B" and "C," respectively. These Notices of Intent to Accelerate Letter satisfies the first and

8   third requirements.

9        Defendants also attempted to contact Plaintiff by telephone at least three times on different

10   days. Delong Decl., ¶ 6. Plaintiff did not respond to any of the phone calls. *Id.*

11        In addition, Plaintiff's argument that the agent identified as "0.005029" is not a real person is

12   immaterial as Defendants did not violate any statutory requirements. At the bottom of the

13   Declaration of Compliance, there is a signature which obviously belongs to a real person. In any

14   event, Civil Code § 2923.5 provides guidelines to lenders **before** a notice of default is recorded to

15   ensure that the borrower was contacted or attempts to contact the borrower were made. In short,

16   Defendants clearly satisfied those requirements under Civil Code § 2923.5.

17        F.   **Plaintiff's Failure to Tender the Amount Due on the Loan Precludes Injunctive**

18             **Relief**

19        Actions that seek to prevent or undo a foreclosure cannot go forward unless the plaintiff has

20   at least alleged a credible offer to tender the indebtedness. *Humboldt Sav. Bank v. McCleverty*

21   (1911) 161 Cal. 285, 290; *United States Cold Storage v. Great Western Savings and Loan Assn.*

22   (1985) 165 Cal. App. 3d 1214, 1222. The tender requirement is founded on equitable principles. *Id.*

23   at 1224-25. Because the trustor's default resulted in the foreclosure to begin with, he must give

24   proof that he can redeem the property before the sale is set aside. *Id.* at 1225 ("It would be futile to

25   set aside a foreclosure sale on the technical ground that notice was improper, if the party making the

26   challenge did not first make full tender and thereby establish his ability to purchase the property.").

27   Moreover, "[t]o hold otherwise would permit plaintiffs to state a cause of action without the

28   necessary element of damage to themselves." *Arnolds Management Corp. v. Eischen* (1984) 158

136045.30868/95078525v.1                          11

1   Cal. App. 3d 575, 580.  The requirement that a tender of the amount owing is necessary before a

2   foreclosure sale can be challenged applies to any claim that is "implicitly integrated" with the

3   foreclosure sale.  *Id.* at 579 ("A cause of action 'implicitly integrated' with the irregular sale fails

4   unless the trustor can allege and establish a valid tender").

5        Here, Plaintiff readily admits that he defaulted on the loan and that he has "offered to and is

6   ready, willing, and able to unconditionally tender his obligation."  Plaintiff's Suppl. Brief, ¶ 65.

7   However, absent a specific allegation of *how* he intends to tender, i.e., the source of the money and a

8   factual basis for the ability to perform, the claim cannot stand.  *Karlsen v. American Sav. & Loan*

9   *Assn.* (1971) 15 Cal.App.3d 112, 118-119.  Therefore, by Plaintiff's own admissions, Defendants are

10  entitled to enforce their rights under the Deed of Trust, and there is no basis to enjoin Defendants

11  from doing so.

12        **G.    The Junior Lienholder Accepts Risks That a Senior Lien Will be Modified And**

13             **Therefore, the Modification Did Not Change Lien Priority**

14        Plaintiff makes another specious argument that the loan modification of the subject loan

15  somehow became subordinated to plaintiff Datacomm Investments' junior lien. **Plaintiff provides**

16  **no legal authority supporting this contention, and indeed, this flies in the face of BANA and**

17  **others' efforts to work out a loan resolution with Plaintiff.**  More to the point, Plaintiff is

18  attempting to have his cake and eat it too.

19        When a junior lien is placed on property, it is subject to the priority of an existing senior lien.

20  The junior lienor usually investigates the terms of the prior debt and determines the value of his or

21  her lien by the relationship between the value of the property and the terms and unpaid balance of

22  the prior obligation. Similarly, the value of the seller's purchase money mortgage is affected by the

23  unpaid balance and terms of the obligation secured by any lien in existence or to which the seller

24  may agree to subordinate. 5 Cal. Real Est. § 11:102 (3d ed.)  A person who voluntarily extends

25  credit in a junior position may inherently accept some risk of defaults or of modifications under the

26  senior loan.  *Friery v. Sutter Buttes Sav. Bank* (1998) 61 Cal.App. 4th 869, 877-879.

27        In *Friery*, the court held that the seller, who invested in a second deed of trust, accepted all

28  the risks of a junior position and therefore gambled that the equity in the property will be sufficient

136045.30868/95078525v.1                              12

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1   to cover her investment in the worst case scenario – a foreclosure sale by the senior lienholder. *Id.* at

2   878.  The court held that California follows the "first in time, first in right" system of lien priorities

3   and, that, absent any facts giving rise to a special relationship between the senior and junior

4   lienholder, it would defy logic to conclude that taking steps to renegotiate a loan to protect the senior

5   lien may subject the senior lienholder to the loss of priority unless the junior lienholder consents.

6   Such a rule, the court held, would amount to the "tail wagging the dog." *Id.*

7          In this case, Plaintiff requested and was approved for a loan modification with WFB's

8   predecessor in interest.  Plaintiff signed the Loan Modification Agreement.  Delong Decl, ¶ 4,  Exh.

9   "A." Paragraph 4 of Loan Modification Agreement specifically provides that "Nothing in this

10  agreement shall be understood or construed to be a satisfaction or release in whole or in part of the

11  Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the

12  Note, and Security Instrument, will remain unchanged, and the Borrower and Lender will be bound

13  by, and comply with, all terms and provisions thereof, as the Lender may require."

14         Therefore, the loan modification did not change the position of WFB's lien.  Similarly,

15  Plaintiff's argument that the loan modification is void because BANA and Plaintiff are not in privity

16  equally fails as evidenced by the signed Loan Modification Agreement with WFB's predecessor in

17  interest.  And, Plaintiff obviously benefitted from the loan modification which he is now attempting

18  to void.  In any event, Plaintiff's argument is contrary to public policy.  These days, lenders are

19  encouraged to provide loan modifications to borrowers as an alternative to foreclosure. Therefore, it

20  would make no sense that lenders would be in constant threat of losing priority of their liens every

21  time they provide loan modifications to borrowers.  Thus, Plaintiff's argument that the loan

22  modification affected WFB's senior lien position fails.

23  **IV.    IF AN INJUNCTION IS GRANTED, PLAINTIFF MUST POST A BOND**

24         As the previous analysis demonstrates, Plaintiff has clearly failed to prove a likelihood that

25  he will prevail on his claims.  Thus, the present Application should be denied.  Nevertheless, in the

26  event that the Court does grant a preliminary injunction, it should do so on the condition that

27  Plaintiff posts a bond as required by law.

28

136045.30868/95078525v.1                                13

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1    The imposition of a bond in such a situation is mandatory.  Code of Civil Procedure Section
2    529(a) **requires** that the amount of the undertaking be sufficient to 'pay to the party enjoined such
3    damages … as the party may sustain by reason of the injunction ….'  Thus, the trial court's function
4    is to estimate the harmful effect which the injunction is likely to have on the restrained party, and to
5    set the undertaking at that sum." *ABBA Rubber Co. v. Seaquis* (1991) 235 Cal.App.3d. 1, 14-16
6    (emphasis added).  Additionally, "[i]t is now well settled that reasonable counsel fees and expenses
7    incurred in successfully procuring a final decision dissolving the injunction are recoverable as
8    'damages' within the meaning of the language of the undertaking." *Id.* at 15.

9        Continuing to restrain Defendants from foreclosing upon the Property will result in
10   Defendants sustaining damages in the form of their inability to collect rent and/or sell the Property.
11   If a preliminary injunction is issued, litigation with regard to the issues raised in Plaintiff's
12   Complaint is likely to proceed for at least a year.  Given this circumstance, it follows that Plaintiff
13   should be ordered to post a bond to cover the amount in arrears on the Loan and one year's rent.  In
14   addition, Plaintiff should be ordered to post a second bond worth approximately $50,000 to account
15   for the attorneys' fees and costs that Defendants are likely to incur to defend this case through trial.
16   As a result, in the event a preliminary injunction is granted, Plaintiff should be required to post a
17   bond in an amount to be determined at the time of the hearing.

18   **V.    CONCLUSION**

19       Plaintiff cannot meet his burden of establishing a likelihood of prevailing on his claims for a
20   preliminary injunction to issue as he has failed to challenge Defendants' authority to legally
21   foreclose.  Notably, Plaintiff waited until the **very last minute** to apply for a temporary restraining
22   order which proves that **no such exigent circumstance ever existed**.  For these reasons and the
23   foregoing reasons, the Court should deny the Order to Show Cause Regarding Preliminary
24   Injunction.

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1

2   DATED:  June 15, 2012        BLANK ROME LLP

3

4                               By: _____
                                    ANGELA Y. SHIN
5                               Attorneys for WELLS FARGO BANK, N.A., as Trustee
                                on behalf of holders of the HarborView Mortgage Loan
6                               Trust, Mortgage Loan Pass-Through Certificates Series
                                2006-12, BANK OF AMERICA, N.A. and
7                               RECONTRUST COMPANY, N.A.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1925 Century Park East, 19th Floor, Los Angeles, California 90067.

On June 15, 2012, I served the foregoing document(s) described as **OPPOSITION TO THE ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; DECLARATION OF DIANA DELONG** on the parties in this action by serving:

Joseph La Costa, Esq.
7840 Mission Center Court, Suite 104
San Diego, CA  92108

☒　　**By Facsimile Transmission:**  On June 15, 2012, I caused the above-named document to be transmitted by facsimile transmission, from fax number (424) 239-3434, to the offices of the addressee(s) at the facsimile number(s) so indicated below.  The transmission was reported as complete and without error.

☒　　**By E-Mail Electronic Transmission:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) so indicated on June 15, 2012 at joelacostaesq@gmail.com.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

Executed on June 15, 2012, at Los Angeles, California.

☒　　STATE　　I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Dina J. Melendez

136045.30868/95078525v.1

16

**OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

1 | BLANK ROME LLP
Todd A. Boock (SBN 181933)
2 | TBoock@BlankRome.com
Angela Y. Shin (SBN 241132)
3 | AShin@BlankRome.com
1925 Century Park East, 19th Floor
4 | Los Angeles, CA 90067
Telephone:    424.239.3400
5 | Facsimile:    424.239.3434

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**06/15/2012** at 03:48:00 PM
Clerk of the Superior Court
By Margaret M Demaria, Deputy Clerk

6 | Attorneys for WELLS FARGO BANK, N.A., as Trustee on behalf of holders of the HarborView
Mortgage Loan Trust, Mortgage Loan Pass-Through Certificates Series 2006-12, BANK OF
7 | AMERICA, N.A., and RECONTRUST COMPANY, N.A.

8

9 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 | **COUNTY OF ORANGE**

11

12 | BRIAN McLAUGHLIN; DATACOM
INVESTMENT COMPANY, INC.,
13 |
                          Plaintiff,
14 |
15 | vs.
16 | WELLS FARGO BANK, NATIONAL
ASSOCIATION; BANK OF AMERICA,
NATIONAL ASSOCIATION; RECONTRUST
17 | COMPANY, NATIONAL ASSOCIATION; AND
DOES 1 THROUGH 10, INCLUSIVE,
18 |
19 |                          Defendants.

Case No. 30-2012-00561729-CU-CO-CJC

[Assigned to Hon. Thierry Patrick Colaw, Dept. C25]

**DECLARATION OF DIANA DELONG IN SUPPORT OF OPPOSITION TO THE ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Date:    June 29, 2012
Time:    10:00 a.m.
Dept:    C25

20

21 | **DECLARATION OF DIANA DELONG**

22 | I, DIANA DELONG declare as follows:

23 |         1.      I am a Mortgage Resolution Specialist employed by Bank of America, N.A.

24 | ("BANA") as part of its Mortgage Resolution Team.  I have personal knowledge of the matters set

25 | forth in this declaration and, if called upon to testify, I could and would competently testify thereto.

26 | / / /

27 | / / /

28 | 136045.30868/95079774v.1                              1
**DECLARATION OF DIANA DELONG IN SUPPORT OF OPPOSITION TO PLAINTIFF'S APPLICATION
FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY
INJUNCTION SHOULD NOT ISSUE**

1    2.    As a Mortgage Resolution Specialist, I am responsible for managing certain files that

2    are in litigation and work directly with BANA's outside counsel.  Although Select Portfolio

3    Servicing ("SPS") is the current loan servicer of this loan, BANA continues to manage outside

4    counsel to handle litigated/contested loan files.  I have access to the relevant documents relating to

5    this file, including correspondences, loan documents, payment history, loan modifications, credit

6    reports, and notes from BANA (the "Loan File").  I have reviewed the Loan File in preparation of

7    this declaration.

8    3.    The Loan File contains a copy of the Loan Modification Agreement dated February

9    25, 2009 and signed by Plaintiff.  A true and correct copy of the Loan Modification Agreement is

10   attached hereto as Exhibit "A."

11   4.    The Loan File also contains copies of the Notice of Intent to Accelerate letters dated

12   October 18, 2010 and November 17, 2010 with copies of signed return receipts.  True and correct

13   copies of the Notice of Intent to Accelerate letters are attached collectively as Exhibits "B" and "C,"

14   respectively.

15   5.    The Loan File also contains notes regarding attempts made by BANA to Plaintiff to

16   discuss Plaintiff's default on the loan.  My review of the notes reflects that an authorized agent spoke

17   with the borrower on September 1, 2010, September 7, 2010, and October 27, 2010 regarding

18   late/partial payments and HUD options.

19   6.    My review of the notes also reflects that on August 19, 2010, a letter was sent to

20   Plaintiff.  The notes also reflect that the notice was followed up by the following telephone call

21   attempts on: (1) September 8, 2010; (2) September 11, 2010; and (3) September 15, 2010.

22   I declare under penalty of perjury under the laws of the State of California that the foregoing

23   is true and correct and that this declaration was executed at _Plano_, Texas on this _15th_ day of

24   June, 2012.

25

26   Diana Delong, Declarant

27

28   136045.30868/95079774v.1                                      2

---

**DECLARATION OF DIANA DELONG IN SUPPORT OF OPPOSITION TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1925 Century Park East, 19th Floor, Los Angeles, California 90067.

      On June 15, 2012, I served the foregoing document(s) described as **DECLARATION OF DIANA DELONG IN SUPPORT OF OPPOSITION TO the ORDER TO SHOW CAUsE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** on the parties in this action by serving:

Joseph La Costa, Esq.
7840 Mission Center Court, Suite 104
San Diego, CA  92108

☒   **By Facsimile Transmission:**  On June 15, 2012, I caused the above-named document to be transmitted by facsimile transmission, from fax number (424) 239-3434, to the offices of the addressee(s) at the facsimile number(s) so indicated below.  The transmission was reported as complete and without error.

☒   **By E-Mail Electronic Transmission:**  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person(s) at the e-mail address(es) so indicated on June 15, 2012 at joelacostaesq@gmail.com.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was incomplete or unsuccessful.

      Executed on June 15, 2012, at Los Angeles, California.

☒   STATE   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Dina J. Melendez

136045.30868/95079774v.1           4

**DECLARATION OF DIANA DELONG IN SUPPORT OF OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

# EXHIBIT A



**Countrywide**

HOME LOANS

Attn  Home Retention Division
Countrywide Modification
100 Beecham Drive
Pittsburgh, PA 15205

**Notice Date:** February 25, 2009

**Account No.:** 148375920

BRIAN MCLAUGHLIN
24040 Camino Del Avion
Ste A146
Monarch Beach, CA 92629

**Property Address:**
753 BARRACUDA WAY, LAGUNA BEACH,
CA 92651

IMPORTANT MESSAGE ABOUT YOUR LOAN

We are pleased to advise you that your loan modification has been approved.  In order for the modification to be valid, the enclosed documents need to be signed and returned

The following amounts will be added to your current principal balance, resulting in a modified principal balance of $1,096,600.95 prior to your first payment date  The amount added to your loan is

| | |
|---|---|
| Interest | $37,176.39 |
| Fees | $200.00 |
| Escrow | $0.00 |
| Total | $37,376.39 |

Your new modified monthly payment will be $21,852.60, effective with your May 1, 2009 payment.  This payment is subject to change if your escrow account is reanalyzed or if you have a step rate, interest only or adjustable rate loan type   Your current interest rate is 8.375%   Your new interest rate will be 4.25%   We are fixing this rate for a period of 5 years  Please be advised your monthly payment will increase significantly when the interest-only period expires, and you are required to make principal and interest payments for the remaining term of the loan  This is sometimes referred to as payment shock   Your payment will increase significantly because we are adding the amounts indicated above to your unpaid principal balance, which will cause additional interest to accrue each month, and each payment will also include a larger component of principal  Your loan also contains a variable rate feature  Please read your loan modification and loan documents carefully to understand how your payment may increase even more, subject to the terms of your original note, as the interest rate on your loan fluctuates with the changing market   This Agreement will bring your loan current, however, you are still required to pay back the entire unpaid principal by the maturity date for your loan

We encourage you to remit more than the interest-only payment when possible to reduce the impact of the Agreement on your future monthly payments    Please see the additional Payment Choices in your Interest-Only monthly statement for ways to help you pay-down principal  Paying down principal now will help both to reduce the amount of interest you owe now by reducing your new Interest-Only payment and will reduce your new monthly payment of principal and interest that will be due at the end of the Interest-Only period

Your new reduced interest rate will be effective as of April 1, 2009 and it will remain in effect until March 1  2014

A breakdown of your payment is as follows

| | |
|---|---|
| Interest Only | $3,883.80 |
| Escrow | $17,968.80 |
| Total Payment | $21,852.60 |



The HOPE Team
CHL Loan # 148375920

Page 1 of 5

WDOCSCOV LMS 8120 02/25/2009

**WHAT YOU SHOULD DO**

Please sign, date and return one (1) complete set of enclosed documents to us in the re-usable Fed-Ex envelope. Please use the return label provided and mail no later than March 25, 2009 to the following address:



**HOME LOANS**

Countrywide Modification, 100 Beecham Drive, Pittsburgh, PA 15205

**If you have questions, Loan consultants are standing by from 8:00 AM until 9:00 PM CT Monday through Friday, and 8:00 AM until 3:00 PM CT on Saturday except holidays at 877-665-6866.**

This offer is contingent upon Countrywide receiving relief from the Automatic Stay for any bankruptcy in which the property referred to in the Loan Modification Agreement is included at the time of the modification.

If any issues arise between the date of this commitment and the date on which all of the terms and conditions of this letter are finalized, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amount, then we may terminate this offer and pursue all collection action, including foreclosure.

This Letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property. In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than March 25, 2009, we will continue our collections actions without giving you additional notices or response periods.

The following documents have been enclosed
**Modification Agreement**-Must be signed in the presence of a Notary. The notary acknowledgment must be in recordable form. All parties who own an interest in the property must sign the modification agreement as their name appears

The following documents may have been included if applicable to your loan.

**California All Purpose Acknowledgment** – This document will only be used if the loan modification agreement is being executed in the state of California. It will be utilized by a notary of the state of California in place of the notary section contained in the Loan Modification Agreement

**Bankruptcy Disclosure** – All parties who own an interest in the property must sign the Bankruptcy Disclosure as their name appears

**THANK YOU FOR YOUR BUSINESS**

The HOPE Team

Countrywide is required by law to inform you that this communication is from a debt collector.



The HOPE Team
CHL Loan # 148375920

## LOAN MODIFICATION AGREEMENT
### (Interest Only Adjustable Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 25th day of February, 2009, between BRIAN MCLAUGHLIN (the "Borrower(s)") and Countrywide (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 14th day of September, 2006 in the amount of $1,000,000.00, and (2) the Note secured by, the Security Instrument, which covers the real and personal property described in the Security instrument and defined therein as the "Property", located at: 753 BARRACUDA WAY, LAGUNA BEACH, CA 92651.

The real property described being set forth as follows

### SAME AS IN SAID SECURITY INSTRUMENT

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.   As of the 1st day of April, 2009, the amount payable under the Note or Security Instrument (the "Unpaid Principal Balance") is U.S. $1,096,600.95, consisting of the amount(s) loaned to the Borrower by the Lender which may include, but not limited to, any past due principal payments, interest , fees and/or costs capitalized to date.

2.   The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Interest will be charged on the Unpaid Principal Balance from the 1st day of April, 2009.  The Borrower promises to make monthly payments in the amount of U.S. $3,883.80 beginning on the 1st day of May, 2009.   The monthly payment will adjust in accordance with the Note, and any other loan document that is affixed to or incorporated into the Note and Rider and provides for, implements or relates to any change or adjustment in the monthly payment amount under the Note.  If on the 1st day of October, 2036 (the "Maturity Date"), the borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3.   The Borrower will make such payments at Countrywide, 7105 Corporate Drive, (PTX-B-36), Plano, TX 75024 or at such other place as the Lender may require

4.   Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement

5.   In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary.  If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note.  All documents Lender requests of Borrower(s) shall be referred to as "Documents."  Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.



As evidenced by their signatures below  the Borrower and the Lender agree to the foregoing

Dated 3/25/09

BRIAN MCLAUGHLIN

STATE OF _____

COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

NOTARY CERTIFICATE IS ATTACHED
3/25/09

Signature _____

## CALIFORNIA NOTARY ACKNOWLEDGMENT
### (For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _ORANGE_ ————

On _MAR. 25ᵀᴴ 2009_ before me _DANIEL J. CABRAL  NOTARY PUBLIC_,
                                    (insert name and title of the officer)

personally appeared _BRIAN MCLAUGHLIN_ ————  ——— ——— — —— —
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _D̶ g. cn_ ____

> DANIEL J. CABRAL
> Commission # 1713680
> Notary Public - California
> Orange County
> My Comm. Expires Dec 31, 2010

NOTARY SEAL

THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

Document  Loan Modification Agreement
Number of Pages
Date of Document
Signer(s) Other Than Named Above ____

**EXHIBIT B**

**Bank of America**

**Home Loans**
P.O. Box 10221
Van Nuys, CA 91410-0221

*Business Address:*
400 National Way
Simi Valley CA 93065-6285

*Send Payments to:*
P.O. Box 515503
Los Angeles, CA 90051-6803

October 18, 2010

Sent Certified Mail:
7113 8257 3474 6652 4250
<u>Return Receipt Requested</u>

Brian McLaughlin
3 WHITE SAIL
LAGUNA NIGUEL, CA 92677-4243

Account No.: 148375920
Property Address:
753 Barracuda Way
Laguna Beach, CA 92651

### NOTICE OF INTENT TO ACCELERATE

Dear Brian McLaughlin:

BAC Home Loans Servicing, LP (hereinafter "BAC Home Loans Servicing, LP") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this notice is as follows:

| Monthly Charges: | 09/01/2010 | | $13,437.70 |
|---|---|---|---|
| Late Charges: | | | |
| | 10/01/2010 | | $194.19 |
| Other Charges: | Total Late Charges: | | $0.00 |
| | Uncollected Costs: | | $0.00 |
| | Partial Payment Balance: | | ($6,718.85) |
| | | **TOTAL DUE:** | **$6,913.04** |

You have the right to cure the default. To cure the default, on or before November 17, 2010, BAC Home Loans Servicing, LP must receive the amount of $6,913.04 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before November 17, 2010.

The default will <u>not</u> be considered cured unless BAC Home Loans Servicing, LP receives "good funds" in the amount of $6,913.04 on or before November 17, 2010. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. BAC Home Loans Servicing, LP reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before November 17, 2010, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, BAC Home Loans Servicing, LP and the Noteholder shall be entitled to collect all fees and costs incurred by BAC Home Loans Servicing, LP and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

This communication is from a debt collector.
Please write your account number on all checks and correspondence.
We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BLQNSENV 9795 12/11/2008

**Payment Instructions:**
- Make your check payable to BAC Home Loans Servicing, LP
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.



| Account Number: 148375920-3 | | |
|---|---|---|
| Brian McLaughlin | | |
| 753 Barracuda Way | | |
| Laguna Beach, CA 92651 | | |

Balance Due for charges listed above $6,913.04 as of October 18, 2010
Please update e-mail information on the reverse side of this coupon

BLQNSENV

| Additional Principal | |
|---|---|
| Additional Escrow | |
| Check Total | |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
BAC Home Loans Servicing, LP
PO BOX 515503
Los Angeles, CA 90051-6803

148375920300000691304000691304

⑆586990058⑆148375920⑈

If you are unable to cure the default on or before November 17, 2010, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP. Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ⅓ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it.

- Deed-in-Lieu: Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by November 17, 2010 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation. Housing counselors can help you understand the law and your options. They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance. You may find a HUD-approved housing counselor near you by calling 1-800-569-4287. For the hearing impaired, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

Time is of the essence. Should you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-569-6654. Our office hours are between Mon - Fri, 8am to 9pm Eastern Time.

Sincerely,

Loan Counseling Center

BAC Home Loans Servicing, LP is a subsidiary of Bank of America, N.A.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 148375920
Brian McLaughlin E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law. If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows: (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan. Please specify if you want an additional amount applied to future payments, rather than principal reduction.

Postdated checks: Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan.



**Bank of America**

Home Loans
PO Box 9048
Temecula, CA 92589-9048

**PRESORT**
First-Class Mail
U.S. Postage and
Fees Paid
WSO

7113 8257 1474 7754 6151

**Send Payments to:**
P.O. Box 515503
Los Angeles, CA 90051-6803

**Send Correspondence to:**
PO Box 5170, MS SV314B
Simi Valley, CA 93065

20101117-7

Brian McLaughlin
3 White Sail
Laguna Niguel, CA 92677-4243



BLQNSENV 12221 09/01/2010





# EXHIBIT C

**Bank of America**

Home Loans
P.O. Box 10221
Van Nuys, CA 91410-0221

Business Address:
400 National Way
Simi Valley CA 93065-6285

Send Payments to:
P.O. Box 515503
Los Angeles, CA 90051-6803

November 17, 2010

Sent Certified Mail:
7113 8257 1474 7754 6151
Return Receipt Requested

Brian McLaughlin
3 White Sail
Laguna Niguel, CA 92677-4243

Account No.: 148375920
Property Address:
753 Barracuda Way
Laguna Beach, CA 92651

### NOTICE OF INTENT TO ACCELERATE

Dear Brian McLaughlin:

BAC Home Loans Servicing, LP (hereinafter "BAC Home Loans Servicing, LP") services the home loan described above on behalf of the holder of the promissory note (the "Noteholder"). The loan is in serious default because the required payments have not been made. The total amount now required to reinstate the loan as of the date of this notice is as follows:

| Monthly Charges: | 10/01/2010 | | $6,718.85 |
|---|---|---|---|
| | 11/01/2010 | | $6,791.91 |
| Late Charges: | 10/01/2010 | | $194.19 |
| Other Charges: | Total Late Charges: | | $0.00 |
| | Uncollected Costs: | | $50.00 |
| | Partial Payment Balance: | | ($2,098.33) |
| | | TOTAL DUE: | $11,656.62 |

You have the right to cure the default. To cure the default, on or before December 17, 2010, BAC Home Loans Servicing, LP must receive the amount of $11,656.62 plus any additional regular monthly payment or payments, late charges, fees and charges which become due on or before December 17, 2010.

The default will not be considered cured unless BAC Home Loans Servicing, LP receives "good funds" in the amount of $11,656.62 on or before December 17, 2010. If any check (or other payment) is returned to us for insufficient funds or for any other reason, "good funds" will not have been received and the default will not have been cured. No extension of time to cure will be granted due to a returned payment. BAC Home Loans Servicing, LP reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. For example, if less than the full amount that is due is sent to us, we can keep the payment and apply it to the debt but still proceed to foreclosure since the default would not have been cured.

If the default is not cured on or before December 17, 2010, the mortgage payments will be accelerated with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property. If your property is foreclosed upon, the Noteholder may pursue a deficiency judgment against you to collect the balance of your loan, if permitted by law.

You may, if required by law or your loan documents, have the right to cure the default after the acceleration of the mortgage payments and prior to the foreclosure sale of your property if all amounts past due are paid within the time permitted by law. However, BAC Home Loans Servicing, LP and the Noteholder shall be entitled to collect all fees and costs incurred by BAC Home Loans Servicing, LP and the Noteholder in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and foreclosure.

Your loan is in default. Pursuant to your loan documents, BAC Home Loans Servicing, LP may, enter upon and conduct an inspection of your property. The purposes of such an inspection are to (i) observe the physical condition of your property, (ii) verify that the property is occupied and/or (iii) determine the identity of the occupant. If you do not cure the default prior to the inspection, other actions to protect the mortgagee's interest in the property (including, but not limited to, winterization, securing the property, and valuation services) may be taken. The costs of the above-described inspections and property preservation efforts will be charged to your account as provided in your security instrument and as permitted by law.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

This communication is from a debt collector.
Please write your account number on all checks and correspondence.
We may charge you a fee (of up to $40.00) for any payment returned or rejected by your financial institution, subject to applicable law.

BLQNSEnV 12.21 9501/2010

Payment Instructions:
- Make your check payable to BAC Home Loans Servicing, LP
- Don't send cash
- Please include coupon with your payment

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

Account Number: 148375920-3
Brian McLaughlin
753 Barracuda Way
Laguna Beach, CA 92651

Balance Due for charges listed above, $11,656.62 as of November 17, 2010.
Please update e-mail information on the reverse side of this coupon.

BLQNSENV

| Additional Principal | |
| Additional Escrow | |
| Check Total | |

BAC Home Loans Servicing, LP
PO BOX 515503
Los Angeles, CA 90051-6803
1-800-669-6654

148375920300001165662001165662



‹:586990058‹:148375920·"

If you are unable to cure the default on or before December 17, 2010, BAC Home Loans Servicing, LP wants you to be aware of various options that may be available to you through BAC Home Loans Servicing, LP to prevent a foreclosure sale of your property. For example:

- Repayment Plan: It is possible that you may be eligible for some form of payment assistance through BAC Home Loans Servicing, LP.  Our basic plan requires that BAC Home Loans Servicing, LP receive, up front, at least ½ of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available.

- Loan Modification: Or, it is possible that the regular monthly payments can be lowered through a modification of the loan by reducing the interest rate and then adding the delinquent payments to the current loan balance. This foreclosure alternative, however, is limited to certain loan types.

- Sale of Your Property: Or, if you are willing to sell your home in order to avoid foreclosure, it is possible that the sale of your home can be approved through BAC Home Loans Servicing, LP even if your home is worth less than what is owed on it.

- Deed-In-Lieu Or, if your property is free from other liens or encumbrances, and if the default is due to a serious financial hardship which is beyond your control, you may be eligible to deed your property directly to the Noteholder and avoid the foreclosure sale.

If you are interested in discussing any of these foreclosure alternatives with BAC Home Loans Servicing, LP, you must contact us immediately. If you request assistance, BAC Home Loans Servicing, LP will need to evaluate whether that assistance will be extended to you. In the meantime, BAC Home Loans Servicing, LP will pursue all of its rights and remedies under the loan documents and as permitted by law, unless it agrees otherwise in writing. Failure to bring your loan current or to enter into a written agreement by December 17, 2010 as outlined above will result in the acceleration of your debt.

Additionally, the U.S. Department of Housing and Urban Development (HUD) funds free or very low cost housing counseling across the nation.  Housing counselors can help you understand the law and your options.  They can also help you to organize your finances and represent you in negotiations with your lender if you need this assistance.  You may find a HUD-approved housing counselor near you by calling 1-800-569-4287.  For the hearing impaired, HUD Counseling Agency (TDD) numbers are available at 1-800-877-8339.

Time is of the essence. Should you have any questions concerning this notice, please contact Loan Counseling Center immediately at 1-800-569-6654.  Our office hours are between Mon - Fri, 8am to 9pm Eastern Time.

Sincerely,

Loan Counseling Center

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

E-mail use: Providing your e-mail address below will allow us to send you information on your account.
Account Number: 148375920
Brian McLaughlin E-mail address:

How we post your payments: All accepted payments of principal and interest will be applied to the longest outstanding installment due, unless otherwise expressly prohibited or limited by law.  If you submit an amount in addition to your scheduled monthly amount, we will apply your payments as follows:  (i) to outstanding monthly payments of principal and interest, (ii) escrow deficiencies, (iii) late charges and other amounts you owe in connection with your loan and (iv) to reduce the outstanding principal balance of your loan.  Please specify if you want an additional amount applied to future payments, rather than principal reduction

Postdated checks:  Postdated checks will be processed on the date received unless a loan counselor agrees to honor the date written on the check as a condition of a repayment plan





**Countrywide**
HOME LOANS
PO Box 9048
Temecula, CA 92589-9048

2210290248

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

**Send Payments To:**
PO Box 10219
Van Nuys, CA 91410-0219

**Send Correspondence to:**
PO Box 5170, MS SV314B
Simi Valley, CA 93065

Brian McLaughlin
24040 Camino Del Avion
Suite A146
Monarch Beach, CA 92629-4005

20080717-7
BLONSENV

1066-v13







# EXHIBIT 11

Joseph La Costa
CB#: 108443
7840 Mission Center Court, Suite #104
San Diego, CA 92108
(619) 922-5287

Attorney for Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF ORANGE

| | |
|---|---|
| **Brian McLaughlin; Datacom Investment Company, Inc.,** | ) Case No: 30-2012-00561729-CU-CO-CJC ) ) |
| Plaintiffs, | ) **REPLY TO DEFENDANT'S** ) **OPPOSITION TO PLAINTIFF'S** ) **MEMORANDUM IN SUPPORT OF** ) **PLAINTIFFS' REQUEST FOR A** ) **PRELIMINARY INJUNCTION** |
| vs. | ) |
| **Wells Fargo Bank, National Association;** | ) **Dept: C-25** |
| **Bank of America, National Association;** | ) **Judge: Hon. Thierry P. Colaw** |
| **Recontrust Company, National Association;** | ) **Date: June 29, 2012** |
| **and Does 1 through 10 inclusive,** | ) |
| Defendants. | ) **Time: 10:00 a.m.** ) |

## 1. INTRODUCTION

The Plaintiff replies to the Defendant's Opposition to Plaintiff's request for a preliminary injunction.

First and foremost, it is incumbent on the Plaintiff to note that that the Defendant's entire argument is premised upon the false characterization of Plaintiff's single cause of action as a "foreclosure defense strategy." It is not.

The Plaintiff has filed a single cause of action for Declaratory Relief to ascertain the true standing of the parties with respect to the Note and Deed of Trust that encumbers the Plaintiff's property. Nothing more, and nothing less.

~ 1 ~

1    The fact that the Defendant seeks to subvert the *status quo* to strip possession to the
2    property without itself providing a bond or security to protect the Plaintiff's well documented
3    rights to the property, as contrasted to the Defendants' claimed rights premised only upon the
4    Defendants' factually unverified claims to be the successor in interest to the property serves only
5    to firmly demonstrate the fallacy of the Defendants' arguments.

6    A cause of action for Declaratory Relief is entitled to priority in a trial setting, and the
7    Plaintiff has every interest and intention of litigating the matter in an expeditious manner. Why
8    the Defendants believe the case would take over a year to get to trial is unknown to the Plaintiff.
9    Certainly, if the Defendant's standing to collect Plaintiff's mortgage payments is as clear as
10   alluded to by the Defendant then the cause of action would be subject to dismissal by a properly
11   documented request for summary judgment. The likelihood of success of such a motion is
12   certainly disputed by the Plaintiffs.

13   The Plaintiffs take issue and great umbrage at the Defendant's obfuscatory tactics in
14   attempting to align the pending cause of action as a "foreclosure defense", or a "show the note"
15   cause of action. It is not. This case is simply a "show the standing" cause of action, coupled
16   with peripheral issue created because even if the Defendant has standing to claim payments
17   under the Note and Deed of Trust, the sloppy foreclosure methods employed by the Defendant
18   prevent the Defendant from conducting a Trustee's sale, even if they had standing to do so,
19   which the Plaintiff denies.

20   The Plaintiff has not demonized the securitization of loans. The facts speak for
21   themselves, and more importantly, while securitization is a legal method to sell securities, the
22   FAILURE to adhere to the laws established to set up a securitization provide that the resulting
23   trust does not own what it pretends to own. If the Plaintiff's loan and deed of trust are not part of
24   the res of the relevant trust, how can the trust seek to collect on what it does not own? It takes
25   more to establish a contractual right to collect the Plaintiff's payments than an unsupported
26   assertion of the right.

27   It is noteworthy that the Defendant does not deny the trust res does not contain Plaintiff's
28   note, as previously alleged by the Plaintiff.

~ 2 ~

While the Plaintiff may not have standing to accuse the Defendant of securities fraud, the Plaintiff does have standing to assert that only the true pecuniary owner of his Note and Deed of Trust can seek payments related thereto, and if the trust res does not own the Note and Deed of Trust it has no right to the payments that accrue therein.

In addition, the securitization rules that apply to the relevant trust are no different than the articles of incorporation of a corporation. The *ultra vires* acts of a corporation are void if the articles provide for same, and in this case the Pooling and Servicing Agreement for the trust acts as the articles of incorporation, and therefore if the PSA, and relevant New York Law, provides for an exact method for acquiring and holding an asset, any attempt to do so outside of the provisions of the PSA and New York law are void as an *ultra vires* and unauthorized act of the trust.

The Defendant argues as fact several disputed assertions, and based on these fallacious arguments reaches the conclusion that the Preliminary Injunction should not issue, specifically:

1)  The Defendant argues there is no dispute that Wells Fargo Bank (WFB) is the current lienholder of the Property. This is false, there is a real and legitimate dispute.

2)  The Defendant argues that WFB is not required to provide any evidence that it is the holder of the note to legally foreclose. This is false. The Defendant must have a real and demonstrable interest in the property to initiate a foreclosure.

3)  The Defendant argues that they have complied with formalities required to foreclose. This is ABSOLUTELY false, the Defendant has failed in multiple areas to comply with the contractual requirements to initiate a foreclosure, assuming they have a right to do so, which is disputed.

4)  The Defendant argues WFB's loan modification did not change its superior lien position. This is false. The Defendant has cited a case that is not applicable, and not probative given the fact that the actual controlling case law provides an opposite result.

The Plaintiff has filed a single cause of action for Declaratory Relief seeking prompt adjudication of the rights and responsibilities of the parties hereto. The Defendant seeks to upset

~ 3 ~

1   the *status quo*, with no demonstrable actual or real pecuniary interest in the property to do so.

2   The Plaintiff has been forced to file a request for an injunction because the Defendant has elected

3   to undertake an end run around this case by undertaking a trustee's sale that is clearly improper.

4       What is truly amazing is that without one scintilla of evidence to support the Defendants'

5   claims with respect to the Plaintiff's property, the Defendant seeks a tender or a bond to protect

6   its undocumented and specious interests in the property, without itself offering a bond to protect

7   the Plaintiff's interests in his own property.

8

9   **2. THERE IS A REAL, DEMONSTRABLE AND LEGITIMATE DISPUTE AS TO**
10  **WHETHER WELLS FARGO BANK IS THE CURRENT LIENHOLDER OF THE**
    **PROPERTY.**
11

12      Contrary to the false statement to the contrary by the Defendant, there is a real,

13  legitimate, and demonstrable dispute as to whether Wells Fargo Bank is the current lienholder on

14  the property.

15      The Defendants have set forth a version of facts that are not supported by the record, and

16  are specifically disputed by the factual allegations made by the Plaintiffs, and subject to

17  adjudication by this court at the appropriate time.

18      It is irrelevant whether or not MERS had the power to assign the Deed of Trust, because

19  the evidence shows that **MERS DID NOT** actually execute any assignment relative to the

20  Plaintiff's Note and Deed of Trust, and therefore the Defendants' reliance on said assignment is

21  misplaced.

22      The Defendants argue that "On or about September 6, 2011, MERS, as beneficiary of the

23  Deed of Trust, assigned the Deed of Trust from Countrywide to BANA, successor by merger to

24  BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP." Defendants RJN,

25  Exhibit 2.

26      The legitimacy of the assignment is disputed and alleged to be a fraudulent act by and on

27  behalf of the Defendants as more fully set forth in Plaintiff's Memorandum of Points and

28  Authorities.

~ 4 ~

In brief, by way of said "assignment"  (1) MERS did not receive any value or consideration for Plaintiff's Note and Mortgage, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiffs Note and Mortgage; and (3) Martha Munoz, the purported signatory of the purported "Assignment", was not the "Assistant Secretary" for MERS and lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiff's Note and Mortgage (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiff's Note and Mortgage, which Plaintiff claims, as fully set forth in the memorandum, it did not).

On April 4, 2012 the Defendant Bank of America once again attempted to "assign" the Deed of Trust. This calls to mind the venerable maxim "*nemo dat quod non habet*," i.e., one cannot give what one does not have. (See *Mitchell v. Hawley*, 83 U.S. 544, 550 (1872); *Chase v. Sanborn*, 5 F. Cas. 521, 523 (Clifford, Circuit Justice, C.C.D.N.H. 1874) (No. 2,628).)

As shown above, the first attempt to assign the Deed of Trust was void, any subsequent assignment by an invalid successor would also be without any force or effect.

Accordingly, there is a real and clearly articulated dispute regarding the recorded assignments filed on behalf to the Defendant WFB. As more completely set forth in Plaintiff's Memorandum of Points and Authorities, the documents that purport to "assign" interests to WFB are forgeries that were executed by individuals who had no authority to execute the assignments, and who were employed by or on behalf of WFB, and **NOT MERS**. The individuals who signed the assignments were not and are not authorized officers of Mortgage Electronic Registration System (MERS), and therefore the documents have no legal force or effect.

The Defendant will argue the contrary, and this will become an issue for resolution in the underlying Declaratory Relief action, where the Defendant would be able to provide the court with the documentation relative to how a stranger to MERS working for the Defendants or their predecessors could fraudulently purport to be a corporate officer of MERS, without possessing

the requisite authorization from the MERS Board of Directors, and who could fraudulently

affirm receipt of compensation for the assignment, when none exists.

The Court should maintain the *status quo* until the Defendant makes a prima facie

showing of any standing whatsoever independent of the false and fraudulent documents it has

tendered to the court to substantiate its illegitimate interests asserted herein.

### 3. THE DEFENDANT, WHILE NOT REQUIRED UNDER CALIFORIA LAW TO DEMONSTRATE ITS STANDING TO FORECLOSE, IS REQUIRED UNDER ORDINARY CONTRACT LAW TO DO SO IN THE PENDING CAUSE OF ACTION FOR DECLARATORY RELIEF.

The Defendant has cited a plethora of authorities that have recently arisen in foreclosure

defense cases in California.

Because this is not a foreclosure defense case, the cited authorities do not apply. The

Plaintiff has filed a single cause of action for Declaratory Relief and now seeks the parties

maintain the *status quo* through injunctive relief, pending resolution of the questions presented to

the Court.

The Plaintiff does not dispute that a true holder of an assignment of his Note and Deed of

Trust may undertake a foreclosure sale pursuant to California Civil Code Section 2923.5. In the

present case, the Plaintiff disputes that the Defendant is the successor in interest to his original

lender. As shown above, the recorded documents relied upon by the Defendant were and are

false documents, and conveyed nothing to WFB. WTB has no demonstrable contractual standing

to seek any payment or remedy from the Plaintiff.

While ordinarily WFB would not have to provide any evidence that it is the holder of the

note, where, as here, there are demonstrable and verifiable allegations of fraud in the context of a

Declaratory Relief case seeking resolution of the standing of the parties, then WFB will be

required in the underlying Declaratory Relief case to demonstrate STANDING to take any action

with respect to the Note and Deed of Trust.  If it fails to do so, it will be precluded from

enforcing the terms of the Note and Deed of Trust as a matter of law. The Defendant has failed to

~ 6 ~

plead any fact or produce any document to establish it is the successor in interest to the original lender. The failure to do so will defeat the Defendant's defense to Plaintiffs' cause of action.

The pending cause of action was not filed to prevent or delay the foreclosure of the Plaintiff's home. The pending cause of action was filed to obtain a determination of the rights and obligations of the parties. But for the Defendants' attempt to subvert the *status quo* there would be no need for an injunction, and the delay related thereto.

Rather than insist on prompt adjudication of the parties rights and liabilities the Defendant instead attempts to perpetrate a fraud on this Court by filing false documents and hearsay declarations, and maintains that in a Declaratory Relief action related to the standing of the parties that the Defendant is NOT REQUIRED to prove its putative standing to the parties or the Court. In short, the Defendant maintains it is not subject to the jurisdiction of the Court, when the law, and the related contractual obligations themselves, hold otherwise.

The Defendant is ABSOLUTELY REQUIRED to establish standing to collect any payment from the Plaintiff in the underlying Declaratory Relief action.

The Court is asked to preserve the *status quo,* or to require the DEFENDANT to post a bond relative to the irreparable harm the failure to issue an injunction will cause the Plaintiff. In the alternative, the Court is asked to extend the Temporary Restraining Order pending an appeal to the District Court of Appeals so as to maintain the relative position of the parties pending appeal.

4. **THE DEFENDAT HAS COMPLETELY FAILED TO COMPLY WITH THE FORMALITIES REQUIRED AS A CONDITION ANTECEDENT TO CONDUCTING A TRUSTEE'S SALE, AND SHOULD BE ENJOINED FROM UNDERTAKING ANY SALE UNTIL COMPLIANCE WITH THE CONTRACTUAL AND LEGAL FORMALITIES, ASSUMING ARGUENDO THAT IT HAS STANDING TO FORECLOSE, WHICH IS DISPUTED.**

Assuming *arguendo* that that they have a right to do so, the Defendants have completely failed to comply with the contractual and legal formalities required to conduct a valid trustee's sale of the Plaintiff's property.

At the heart of this case, is a contract, which is embodied in the Note and Deed of Trust.

~ 7 ~

In the UNLIKELY EVENT that the Defendant WFB is the true successor in interest to the rights and benefits of Plaintiff's Note and Deed of Trust, then WFB would be required to comply with the contractual formalities set forth in the Note and Deed of Trust, as well as the relevant provisions of California Law. Nothing in the cases cited by the Defendant serves to change the contractual terms provided as between the original contracting parties, and their legitimate successors.

a. THE DEFENDANT HAS FAILED TO COMPLY WITH THE CONTRACTUAL FORMALITIES REQUIRED AS A CONDITION ANTECEDENT TO FILING A NOTICE OF DEFAULT.

Exhibit 1 of the Defendants' Request for Judicial Notice is a copy of the Note and Deed of Trust executed between the Plaintiff and Countrywide Home Loans. Section 22 of the Deed of Trust provides:

> "22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law Provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to the Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in the acceleration of the sums secure by this Security Instrument and the sale of the Property. The notice **shall further inform** the Borrower of the right to reinstate after acceleration and **the right to bring a court action to assert the non-existence of a default or any other defenses of Borrower to acceleration and sale**. (Emphasis added.)

Exhibits "B" and "C" of the Defendants' "Delong Declaration" which are purported to be "Notices of Intent to Accelerate" as well as Exhibit 3 of the Defendants' Request for Judicial Notice which is purported to be a copy of the "Notice of Default" send by the Defendant Recontrust Company, N.A.. All three documents are noteworthy because conspicuously absent from the contents of the all

~ 8 ~

1  three is the language required under Section 22 of the Deed of Trust and highlighted

2  above, which provide a mandatory contractual antecedent to the initiation of a

3
4  nonjudicial foreclosure by the pecuniary beneficiary of the Plaintiff's Note and Deed

5  of Trust.

6      Without inclusion of the mandatory language required under Section 22 of the

7  Deed of Trust even **IF** the Defendant had standing to declare a default, which is

8
9  denied, the holder in due course of Plaintiff's secured financial obligation had a

10  contractual obligation to include specific language in a notice to the Plaintiff as a

11  condition antecedent to proceeding with the filing of a Notice of Default or

12  Conducting a Trustee's sale.

13      The failure to do so renders the Notices as tendered, defective and void such

14  that in the event the Defendants are the true successors in interest, they are required to

15
16  comply with Section 22 of the deed of Trust BEFORE filing a Notice of Default.

17      Having failed to comply with the relevant contractual terms, the Defendant

18  should be enjoined from attempting to undertake a Trustee's Sale of the Plaintiff's

19  property unless and until they provide demonstrable evidence to the court of

20
21  appropriate standing AND they comply with the notice requirements of the Deed of

22  Trust.

23  b. THE DEFENDANT HAS FAILED TO COMPLY WITH THE

24      REQUIREMENTS OF CIVIL CODE SECTION 2923.5 REGARDING

25      TELEPHONIC CONTACT WITH PLAINTIFF MCLAUGHLIN.

26
27      The Defendant has provided a "declaration" of a Ms. Diana Delong as

28  "evidence" that the Defendant, Bank of America, attempted telephonic contact with

~ 9 ~

Plaintiff McLaughlin prior to filing a Notice of Default with respect to the putative loan obligation.

The Declaration of Ms. Delong, to the extent that it attempts to offer an out of court statement by another as to the truth of the matter asserted is inadmissible as being double hearsay.

Ms. Delong may certainly offer testimony regarding what is contained in the business records of the Bank of America. And to this extent Mr. Delong has indicated that the business records reflect that an unidentified "authorized agent" claims to have spoken to and/or attempted to speak to Plaintiff McLaughlin. Unfortunately, the testimony of Ms. Delong is being offered to prove the truth of the matter purportedly asserted by an unknown and unsworn "authorized agent." Who was this "authorized agent?" How can the Plaintiffs and the court evaluate the credibility of the "authorized agent?" It is just as likely an overworked and underpaid minimum wage phone bank worker in a foreign country entered the information in question in order to meet a daily quota rather than actually undertake the purported contacts, and whether or not the calls were actually made or attempted is unknown, and to the extent the declaration attempts to assert that the contents of the business records are true, the declarant lacks the personal knowledge to attest to the veracity of what is obviously hearsay.

The Defendant offers no substantiating information regarding the existence of the phone calls that are denied by the Plaintiff, such as a the name of the person initiating the calls, or perhaps a phone bill reflecting that the calls were actually made.

~ 10 ~

The failure of the Defendants to offer anything more than inadmissible hearsay in support of the factual contention at issue defeats the Plaintiffs' arguments in this regard. There is no proof the required telephone calls were actually made.

c. THE DEFENDANT HAS FAILED TO COMPLY WITH THE REQUIREMENTS OF CIVIL CODE SECTION 2923.5 REGARDING EXECUTION OF A VALID DECLARATION BY A REAL PERSON WITH KNOWLEDGE OF THE FACTS ASSERTED.

The mystery of the identity of the person known as "0.005029" continues.

The Defendants have failed to identify that person, save to assert that it is a "real person." Because the Defendants have asserted that the scribbles at the bottom of the purported Declaration belong to a "real person," the Defendant claims this is sufficient to establish compliance with the relevant section of the code. It is certainly hoped that that the Defendant WFB exercises more care when honoring checks or other contractual obligations. The question remains, who is that "real person?"

The Defendants argue that the execution of the relevant affidavit by any "real person" is sufficient to comply with the Defendants statutory obligations.

The relevant civil code, however, requires that the affidavit be signed under PENALTY OF PERJURY, by someone with KNOWLEDGE OF THE RELEVANT FACTS.

If in fact the declaration is false, as alleged herein, exactly WHO is the person who has committed perjury? Who is it that has put their credibility and veracity on

~ 11 ~

the line by signing the declaration under Penalty of Perjury? Who is "0.005029" such that this persons declaration under oath can be tested?

The Defendants assertions in this regard are ridiculous, and unsupported by any law, statute, custom, or practice in the State of California, and should not be ratified by the Court.

## 5. THE PLAINTIFF HAS MADE A CREDIBLE OFFER OF TENDER AND NOTHING FURTHER IS REQUIRED GIVEN THE FACTS OF THIS CASE.

The Plaintiff has made a credible offer of tender, and nothing further is required of the Plaintiff based on the current record as more fully set forth in the Plaintiff's Points and Authorities.

Contrary to the assertion by the Defendants the Plaintiff has NOT admitted to a Default of his loan obligations as to the Defendants, because the Plaintiff maintains they have no demonstrable standing to enforce the contract as between the Plaintiff and Countrywide Home Loans, Inc.. The Plaintiff asserts that the Defendants have NO STANDING TO DECLARE A DEFAULT, since they are strangers to the contract.

At no time has the Plaintiffs admitted that the Defendants have any pecuniary right to enforce the obligations under the Deed of Trust.

The question arises, if a tender is required, exactly how much tender must be offered to a creditor who is unable to document any right, title, or interest in the underlying obligation? The Defendant has not made a *prima facie* showing of any rights with respect to the underlying Deed of Trust, and they are complete strangers to

~ 12 ~

the Plaintiffs without any privity of contract or privity of estate as between them.

Under such circumstances, certainly the mortgaged property would be considered adequate tender, in the unlikely event the Defendants prevailed on the Declaratory Relief cause of action.

### 6. THE DEFENDANTS LOAN "MODIFICATION" SERVED TO SUBORDINATE ANY CLAIMED LIEN TO THAT ASSERTED BY PLAINTIFF DATACOMM INVESTMENT COMPANY.

The Plaintiff, McLaughlin, maintains that the Defendants are not the real parties in interest to his original Note and Deed of Trust and that the subsequent efforts to "modify" his loan were done by entities that were not authorized to act on behalf of the true lender, and only done for the purposes of attempting to improperly legitimize their standing to collect payments under the Note and Deed of Trust.

The Defendant has cited as authority the *Friery v. Sutter Buttes Sav. Bank* (1998) 61 Cal.App4th 869 as controlling authority for its opposition to the Plaintiffs claims relative hereto. The Defendant, however, fails to offer any explanation or argument as to how the exceptions articulated and established in *Friery* would apply to this case, as opposed to well settled law controlling authority set forth in *Gluskin v. Atlantic Savings & Loan Association* (1973) 32 Cal.App3d 307, 108 Cal.Rptr. 318. Contrary to the arguments by the Defendant the *Friery* case established an exception to well settled law, it did not change the requirements of a proper subordination agreement as set forth in *Gluskin*.

Even accepting the Defendant's use of the "first in time, first in right" analogy, in the event WCB is in fact Plaintiff's creditor, which is disputed, the lien rights of Datacomm Investments, Inc. are "first in time and first in right" as opposed contractual rights established in any putative loan modification by parties who have no privity of contract with the original and

~ 13 ~

true lender, Countrywide Home Loans, Inc, and sought to establish a new obligation in exchange for and to replace the prior debt obligation.

The Defendants attempts to buttress its specious arguments in this regard by stating that "[t]hese days, lenders are encouraged to provide loan modifications to borrowers as an alternative to foreclosure. Therefore, it would not make sense that lenders would be in constant threat of losing priority of their liens every time they provide loan modifications to borrowers." This argument was specifically rejected in *Gluskin v. Atlantic Savings & Loan Association* (1973) 32 Cal.App3d 307, 108 Cal.Rptr. 318, and moreover the use of a "subordination agreement" is a necessary and required formality to the execution and recordation of a modification of a lien interest on real property. The Defendants, in short, argue that the Statute of Frauds has no further place "these days." Such an argument has no legal support whatsoever.

**7. THE PLAINTIFF HAS IN FACT ESTABLISHED A LIKELIHOOD OF PREVAILING ON HIS CLAIMS FOR DECLARATORY RELIEF, AND THE DEFENDANTS HAVE MISTATED THE REQUIREMENTS FOR ISSUANCE OF AN INJUNCTION GIVEN ITS FALLACIOUS RELIANCE ON INAPLICABLE AUTHORITIES RELATED TO FORECLOSURE DEFENSE CASES.**

As more fully set forth in the Plaintiffs' Memorandum and Points and Authorities the Plaintiffs have articulated in a clear and specific manner all of the required antecedents to the issuance of an Injunction. Ignoring the facts, as has been done here by the Defendants, does not give credence to the arguments asserted by the Defendants, it only serves to undermine the Defendants' claims.

As previously set forth by the Plaintiffs, the cause of action filed herein is NOT an attack on the Defendants' putative rights to undertake a nonjudicial foreclosure of Plaintiff McLaughlin's home. Plaintiff McLaughlin has filed a single cause of action for Declaratory Relief and seeks a determination of whether or not the Defendants are the successors of a contract Plaintiff McLaughlin executed with Countrywide Home Loans, Inc. The Defendants

~ 14 ~

claim that they are the successors, but assert that they do not have to prove it, and thus there is a controversy that is ripe for adjudication. The cause of action, as filed DOES NOT request relief from a foreclosure action. It is the Defendants that have attempted an end run around the pending cause of action by attempting to hide from the Plaintiff, and the Court, the true nature of the fraud attempted by the Defendants.

a.  The Plaintiff has alleged that the "assignment" executed on behalf of the Defendants was executed by one who had no authority to do so.

    i.  The Defendant has failed to address that allegation in any manner whatsoever.

    ii.  The evidence of OVERT FRAUD relative to the Plaintiff's financial obligation gives rise to a legitimate dispute that is ripe for adjudication.

b.  The Plaintiff has alleged that WFB, as trustee, was legally precluded from accepting the Plaintiff's Note and Deed of Trust as an asset of the relevant trust 5 years after the trust was closed to accept such assignments.

    i.  The Defendant has failed to address this allegation, save to say the Plaintiffs have no standing because they are not owners of the subject securitization trust.

    ii.  It would be absurd for a borrower to pay an financial obligation to one the borrower knows is incompetent to claim ownership of the obligation. Thus, this issue is ripe for adjudication by the court.

The Plaintiff has articulated a clear and concise basis for issuance of an injunction. The attempt to lump the Plaintiff's cause of action with foreclosure defense cases is not supported by the record. The Plaintiff has filed a simple cause of action for declaratory relief, and it was the

~ 15 ~

actions of the DEFENDANTS that have created the need to maintain the *status quo* or create the risk of irreparable harm for the Plaintiff.

The Plaintiffs do not dispute the authorities allow use of the nonjudicial statutes in the manner contemplated by the Defendants. However, the authorities articulated by the Defendants are inapplicable because the nature of the cause of action filed by the Plaintiffs is NOT that which is set forth in those authorities.  The Plaintiff seeks declaratory relief, and seeks that the status quo be maintained until that is accomplished. The requested injunction should issue, or in the alternative the stay should be extended pending an Appeal to the District Court of Appeals.

**8.  THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST A BOND IN THE ABSENSE OF A PRIMA FACIE SHOWING BY THE DEFENDANTS OF ANY PRIVITY OF CONTRACT WITH THE PLAINTIFF, AND IF THE INJUNCTION IS DENIED, THE DEFENDANTS SHOULD BE REQUIRED TO POST A BOND.**

As more fully set forth in the Memorandum of Points and Authorities filed by the Plaintiffs herein, while a bond is required, in this case the bond amount should be zero. More importantly, since the balance of harms is clearly in favor of the Plaintiff, in the event the Injunction is denied, the Defendant should be required to post a bond, or the denial of the injunction should be stayed pending appeal to the District Court of Appeals.

**9.  CONCLUSION.**

The Plaintiff can and has met the burden of establishing a likelihood of prevailing on his claims for a preliminary injunction, as the Plaintiff has clearly articulated the fact that the Defendant has no standing to make any claim with respect to the Plaintiff's contractual obligations to Countrywide Bank, Inc., and as such the Plaintiff will ultimately prevail in the underlying cause of action.

The pending cause of action is NOT a foreclosure defense case, and in fact is a single cause of action requesting resolution of a controversy that is ripe for adjudication by this Court.

~ 16 ~

The inappropriate attempt by the Defendant to undertake an end run around the pending cause of action in order to strip the Plaintiff from his property is an abuse of process, and an affront to the rule of law. To allow the foreclosure sale to proceed on this factual record is contrary to law.

In addition, assuming *arguendo* that the Defendant does have standing to foreclose the Plaintiff's property, the comical attempt at complying with the contractual and statutory obligations render such efforts to be without any force or effect, such that no valid trustee's sale could proceed based on the attempted compliance by "real" but unidentified individuals who declare under penalty of perjury that they have undertaken the acts required as conditions antecedent to proceeding with a nonjudicial foreclosure.

For the foregoing reasons, the Plaintiffs request the Court issue the Preliminary Injunction. In the alternative, the Plaintiffs request that the Court order the parties maintain the status quo pending appeal to the District Court of Appeals as the loss of his home will cause irreparable harm to the Plaintiff.

For the reasons stated above, the Plaintiff's respectfully request that a preliminary injunction issue as requested.

DATED: June 18, 2012

_____
Joseph La Costa, Attorney for Plaintiffs

~ 17 ~

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name  State Bar number and address)* | FOR COURT USE ONLY |
|---|---|
| Joseph La Costa<br>CBN 108443<br>7840 Mission Center Court, Suite #104<br>San Diego, CA 92108<br><br>TELEPHONE NO 619 922-5287        FAX NO *(Optional)*<br>E-MAIL ADDRESS *(Optional)*<br>ATTORNEY FOR *(Name)* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS 700 Civic Center Drive West
MAILING ADDRESS 700 Civic Center Drive West
CITY AND ZIP CODE Santa Ana, CA 92701
BRANCH NAME Central Justice Center

PETITIONER/PLAINTIFF Brian McLaughlin; Datacom Investment Company

RESPONDENT/DEFENDANT: Wells Fargo Bank, National Association

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER<br>30-2012-00561729-CU-CO-CJC |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place

2. My residence or business address is:
   7840 Mission Center Court, Suite #104
   San Diego, CA 92108
3. On *(date)*. June 18, 2012        I mailed from *(city and state)*. Chula Vista, CA
   the following **documents** *(specify)*.
   REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF
   PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☑ **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid

5 The envelope was addressed and mailed as follows:
   a. **Name** of person served Angela Y. Shin
   b. **Address** of person served.
      Blank and Rome, LLP
      1925 Century Park East, 19th Floor
      Los Angeles, CA 90067

   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 18, 2012

Joseph La Costa
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)                    (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1  2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

# EXHIBIT 12

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 06/29/2012                    TIME: 10:00:00 AM        DEPT:  C25

JUDICIAL OFFICER PRESIDING: Thierry Patrick Colaw
CLERK:  P. Rief
REPORTER/ERM: Kimberly S. Owen-5696 CSR# 5696
BAILIFF/COURT ATTENDANT:  Servando Garcia, Jr

CASE NO: **30-2012-00561729-CU-CO-CJC** CASE INIT.DATE: 04/12/2012
CASE TITLE: **McLaughlin vs. Wells Fargo Bank, National Association**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Contract - Other

EVENT ID/DOCUMENT ID: 71480931

**EVENT TYPE**: Order to Show Cause re: Preliminary Injunction

**APPEARANCES**

Angela Y. Shin, Esq., from Blank Rome LLP, present for Defendant(s) telephonically.

Tentative Ruling posted on the Internet.

Appearances are as noted above. There are no appearances on behalf of Plaintiffs.

The Tentative Ruling will become the ruling of the Court, as follows:

OSC Re: Preliminary Injunction:

**The application for preliminary injunction is denied.** The plaintiffs have not established a likelihood of prevailing on the claims made in the complaint.

(a) The defendant has established that it is the current and senior lienholder on the property pursuant to the recorded Assignment of the Deed of Trust. (i) The plaintiffs' argument that the April 4, 2012 "assignment" was executed after the closing date of the Harborview Trust in the year 2006 somehow prohibits the trust from accepting any assignment after it closed in that year is wholly unsupported by facts or legal authority. First, there is no evidence that the Prospectus and the Pooling and Servicing Agreement terms were violated by the assignment. Furthermore, even if they were the courts have consistently determined that homeowners lack standing to challenge mortgage assignments on a basis that the terms of the Agreement were not complied with since the homeowners are not a party or third-party beneficiary to the Agreement. [See *Sami v. Wells Fargo* (N.D. Cal. 21012) 2012 U.S. Dist. LEXIS 38466.]

(ii) Plaintiffs' arguments with respect to the effect of MERS' Assignment of the Deed of Trust is not persuasive. MERS acts merely as the nominal beneficiary for the lender and any successors and assigns based on the clear terms of the deed of trust which the plaintiff signed. As such, plaintiff

CASE TITLE: McLaughlin vs. Wells Fargo Bank,      CASE NO: **30-2012-00561729-CU-CO-CJC**
National Association

contractually agreed that MERS can assign the deed of trust. Furthermore, case law has consistently determined that there is no basis to question MERS authority as beneficiary to make such assignments. [See *Dancy v. Aurora Loan LLC* (ND Cal.Nov.2, 2010) No. C 10-2602 SBA, 2010 US Dist LEXIS 116513.]

(iii) The courts have repeatedly determined that possession of the original note is not a prerequisite to foreclosure. The defendant is not required to provide any evidence that it is the holder of the note in order to legally foreclose. The court in *Gomez v. Countrywide Home Loans, Inc.* (2011) 192 Cal. App.4th 1149, 1152 rejected a similar argument to that being proposed by the plaintiff here. There is nothing in the statutory provisions establishing the nonjudicial foreclosure process which suggests that a determination regarding whether the owner of the note has authorized its nominee to initiate the foreclosure process is properly within the purview of judicial determination. [See *Gomez v. Countrywide* (2011) 192 Cal. App.4th 1149, 1152.]

(iv) Defendants have established that they complied with the Declaration of Compliance pursuant to California Civil Code §2923.5. Request for Judicial Notice Exhibit 3. Delong Declaration ¶ 5 and 6.

(v) The defendants have established that their loan modification did not change their superior lien position. [See *Friery v. Sutter Buttes Sav. Bank* (1998) 61 Cal.App.4th 869.] Such is consistent with the terms of the Plaintiffs' actual Loan Modification Agreement in this case which states that, "to an agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.... will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as the lender may require." [See Delong Dec. ¶ 4, Ex. A.]

(b) Defendants Request for Judicial Notice in Support of Opposition to Order to Show Cause: this request for judicial notice is granted with respect to each of the five exhibits identified.

Responding Party shall give Notice.

**EXHIBIT 13**

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Joseph La Costa<br>CBN: 108443<br>7840 Mission Center Court, Suite #104<br>San Diego, CA 92108<br>TELEPHONE NO. 619-922-5287   FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Brian McLaughlin; Datacom Investment Company (Plaintiffs) | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br>**07/12/2012** at 03:19:00 PM<br>Clerk of the Superior Court<br>By Lateasha M Stallworth, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Orange**
STREET ADDRESS: 700 West Civic Center
MAILING ADDRESS: 700 West Civic Center
CITY AND ZIP CODE: Santa Ana, CA 92702
BRANCH NAME: Justice Center

PLAINTIFF/PETITIONER: Brian McLaughlin; Datacom Investment Company, Inc.

DEFENDANT/RESPONDENT: Wells Fargo Bank, National Association

| REQUEST FOR DISMISSAL | CASE NUMBER |
|---|---|
| ☐ Personal Injury, Property Damage, or Wrongful Death<br> ☐ Motor Vehicle  ☐ Other<br>☐ Family Law  ☐ Eminent Domain<br>☒ Other (specify) : Declaratory Relief | 30-2012-00561729-CU-CO-CJC |

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1. TO THE CLERK: Please **dismiss** this action as follows:
  a. (1) ☐  With prejudice  (2) ☒  Without prejudice
  b. (1) ☐  Complaint  (2) ☐  Petition
    (3) ☐  Cross-complaint filed by (name):               on (date):
    (4) ☐  Cross-complaint filed by (name):               on (date):
    (5) ☐  Entire action of all parties and all causes of action
    (6) ☒  Other (specify):* Complaint as to Plaintiff BRIAN McLAUGHLIN.

2. (Complete in all cases except family law cases.)
  ☐  Court fees and costs were waived for a party in this case. (This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed).

Date: July 12, 2012

Joseph La Costa
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☒ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross–Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
  Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint – or Response (Family Law) seeking affirmative relief- is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner  ☐ Defendant/Respondent
☐ Cross–Complainant

(To be completed by clerk)
4. ☒  Dismissal entered as requested on (date): 07/12/2012
5. ☐  Dismissal entered on (date):          as to only (name):
6. ☐  Dismissal **not entered** as requested for the following reasons (specify):

7. a. ☐  Attorney or party without attorney notified on (date):
  b. ☐  Attorney or party without attorney not notified. Filing party failed to provide
    ☐  a copy to be conformed  ☐  means to return conformed copy

Date: 07/12/2012 Alan Carlson      Clerk, by _____ , Deputy
                                         Lateasha Stallworth

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.,<br>Gov. Code, § 68637(c), Cal. Rules of Court, rule 3.1390<br>www.courtinfo.ca.gov

CIV-110

| PLAINTIFF/PETITIONER: Brian McLaughlin | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Wells Fargo Bank, N.A. | 30-2012-00561729-CU-CO-CJC |

## Declaration Concerning Waived Court Fees

The court has a statutory lien for waived fees and costs on any recovery of $10,000 or more in value by settlement, compromise, arbitration award, mediation settlement, or other recovery. The court's lien must be paid before the court will dismiss the case.

1. The court waived fees and costs in this action for *(name):*

2. The person in item 1 *(check one):*
   a. ☐  is not recovering anything of value by this action.
   b. ☐  is recovering less than $10,000 in value by this action.
   c. ☐  is recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐  All court fees and costs that were waived in this action have been paid to the court *(check one).*   ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____      ▶  _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                          (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT 14

**CIV-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Joseph La Costa<br>CBN: 108443<br>7840 Mission Center Court, Suite #104<br>San Diego, CA 92108<br><span>TELEPHONE NO.: 619 922-5287</span>   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Brian McLaughlin; Datacom Investment Company (Plaintiffs) | RECEIVED<br>AUG 20 2012<br>BLANK ROME |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Orange**
STREET ADDRESS: 700 West Civic Center
MAILING ADDRESS: 700 West Civic Center
CITY AND ZIP CODE: Santa Ana, CA 92702
BRANCH NAME: Justice Center

PLAINTIFF/PETITIONER: Brian McLaughlin; Datacom Investment Company, Inc.
DEFENDANT/RESPONDENT: Wells Fargo Bank, National Association

| REQUEST FOR DISMISSAL | CASE NUMBER |
|---|---|
| ☐ **Personal Injury, Property Damage, or Wrongful Death**<br>  ☐ Motor Vehicle ☐ Other<br>☐ **Family Law** ☐ **Eminent Domain**<br>☒ **Other** *(specify)* : Declaratory Relief | 30-2012-00561729-CU-CO-CJC |

**- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -**

1. TO THE CLERK: Please dismiss this action as follows:
  a. (1) ☐ With prejudice (2) ☒ Without prejudice
  b. (1) ☐ Complaint (2) ☐ Petition
    (3) ☐ Cross-complaint filed by *(name)*:                        on *(date)*:
    (4) ☐ Cross-complaint filed by *(name)*:                        on *(date)*:
    (5) ☒ Entire action of all parties and all causes of action
    (6) ☐ Other *(specify)*:* .

2. *(Complete in all cases except family law cases.)*
    ☐ Court fees and costs were waived for a party in this case. *(This information may be obtained from the clerk. If this box is checked, the declaration on the back of this form must be completed.)*

Date: August 15, 2012

Joseph La Costa

(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
*If dismissal requested is of specified parties only, of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross–Complainant

3. TO THE CLERK: Consent to the above dismissal is hereby given.**
  Date:

(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint – or Response (Family Law) seeking affirmative relief– is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

▶ _____ (SIGNATURE)
Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross–Complainant

*(To be completed by clerk)*
4. ☐ Dismissal entered as requested on *(date)*:
5. ☐ Dismissal entered on *(date)*:                 as to only *(name)*:
6. ☐ Dismissal not entered as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
        ☐ a copy to be conformed    ☐ means to return conformed copy
   Date:                      Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. July 1, 2009]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.;
Gov. Code, § 68637(c), Cal. Rules of Court, rule 3.1390
www.courtinfo.ca.gov

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Joseph La Costa<br>CBN 108443<br>7840 Mission Center Court, Suite #104<br>San Diego, CA 92108<br><br>TELEPHONE NO.: 619 922-5287          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Brian Mclaughlin; Datacom Investment Company, Inc. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
   STREET ADDRESS: 700 West Civic Center
   MAILING ADDRESS: 700 West Civic Center
   CITY AND ZIP CODE: Santa Ana, 92702
   BRANCH NAME: Justice Center

PETITIONER/PLAINTIFF: Brian McLaughlin; Datacom Investment Company

RESPONDENT/DEFENDANT: Wells Fargo Bank, National Association

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>30-2012-00561729-CU-CO-CJC |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:
   7840 Mission Center Road, Suite #104, San Diego, CA 92018

3. On *(date)*: August 15, 2012     I mailed from *(city and state)*: San Diego, CA
   the following documents *(specify)*:
   1) Request for Dismissal

   ☐   The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
   (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one)*:
   a. ☑   depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐   placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
   business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
   placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
   a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. **Name** of person served:
   b. **Address** of person served:

   ☑   The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service*
   *by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 15, 2012

Joseph La Costa
_____          _____
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)          (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

POS-030(P)

| SHORT TITLE: McLaughlin v. Wells Fargo Bank | CASE NUMBER: 30-2012-00561729-CU-CO-CJC |
|---|---|

## ATTACHMENT TO PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL (PERSONS SERVED)

*(This Attachment is for use with form POS-030)*

**NAME AND ADDRESS OF EACH PERSON SERVED BY MAIL:**

| Name of Person Served | Address (number, street, city, and zip code) |
|---|---|
| | |
| | |
| | |
| Angela Y. Shin | | Blank Rome LLP<br>1925 Century Park East Suite 1900 | Los Angeles, CA 90067 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |